No. 92-438

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

VICTOR J. TACKE,
     Plaintiff/Respondent,

  -v-

ROBERT E. WYNIA, M.D., and
WINONA C. WYNIA,
     Defendants/Appellants,

    and

WILLIAM F. SMITH and RE/MAX OF BIGFORK,
     Respondents.

ROBERT E. WYNIA, M.D., and
WINONA C. WYNIA,
     Plaintiffs/Appellants,

  -v-

C. JOHN EKMAN, SUSAN P. EKMAN and
ALMA JEAN B. KELLENBERGER,
     Defendants/Respondents.

FILED

MAY 2 0 1993

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Twentieth Judicial District,
             In and for the County of Lake,
             The Honorable C. B. McNeil, Judge presiding.

COUNSEL OF RECORD:

     For Appellants:

          William D. Jacobsen, Curtis G. Thompson, Jardine,
          Stephenson, Blewett & Weaver, Great Falls, Montana

     For Respondents:

          Stephen Berg, Warden, Christianson, Johnson & Berg,
          Kalispell, Montana (Tacke); Donald Murray, Murphy,
          Robinson, Heckathorn & Phillips, Kalispell, Montana
          (Ekmans & Kellenberger) Randall Ogle, Ogle & Worm,
          Kalispell, Montana (Smith); Dana Christiansen,
          Murphy, Robinson, Heckathorn & Phillips, Kalispell,
          Montana (Re/Max)

               Submitted on Briefs:  January 21, 1993

                        Decided:  May 20, 1993

Filed:

                            Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

This is an appeal from a Twentieth Judicial District Court, Lake County bench trial judgment in a consolidated case regarding easements. We affirm.

There are three issues before the Court:

1. Did the District Court err in concluding that Wynias' use of the easement across Ekmans' and Kellenberger's property was permissive?

2. Did the District Court err in failing to conclude that Tacke's easement across Wynias' property was extinguished when Tacke's predecessor sold Lots 18 and 19 to Ekmans?

3. Did the District Court err when it located Tacke's easement across the Wynias' property on the "trailer pad" road?

This case is a consolidation of two cases, one filed by Victor Tacke (Tacke) against Robert and Winona Wynia (Wynias), William Smith (Smith), Tacke's predecessor in title and RE/MAX of Bigfork, a real estate company (RE/MAX) and the other action filed by the Wynias against C. John Ekman and Susan Ekman (Ekmans) and Alma Jean B. Kellenberger (Kellenberger). The Wynias, Ekmans, Tacke and Kellenberger own property in Lac Cygne Shores, a platted subdivision on Swan Lake in Lake County. Tacke owns Lot 15, Wynias own Lots 16 and 17, Ekmans own Lots 18 and 19 and Kellenberger owns Lots 20 and 21. The following is a plat for reference:



EASEMENT NO. 1

EASEMENT NO. 2
(Trailer Pad
Road)

SWAN LAKE

3

Smith is the former owner of Lots 15, 18 and 19. He listed the Lots for sale through RE/MAX and subsequently sold Lots 18 and 19 to Ekmans in 1988 and Lot 15 to Tacke in 1989. Wynias bought Lot 16 from the original owners of the entire subdivision, Dr. Virgil Ferree and Gladys Ferree (Ferrees) in 1965. They bought Lot 17 from the Ferrees in 1973.

When the Wynias purchased Lot 16 in 1965, the only access to the lots in the subdivision was by boat. In 1967, the Ferrees built a road leading to the subdivision which they subsequently deeded to the county. They also built an access road from the "county" road near Lot 2 to an area in Lot 16. At that point, the Ferrees discovered that if they continued building the road toward Lot 21, the road would have to be very steep and individual driveways leading to the road would also have to be very steep. Consequently, the Ferrees abandoned the road within Lot 16.

There was an old skid road located near the end of the "abandoned" access road and the Wynias used this road for access to their boat launch. The trial court concluded that the Ferrees acquiesced in Wynias' use of the road and Wynias' use did not interfere in any way with the Ferrees' use and enjoyment of the Ferrees' property. The trial court further concluded that Wynias' use of the skid road was permissive from its inception and at no time adverse or hostile to the rights of the Ferrees, Smith or Kellenberger.

At about the time that the Wynias bought Lot 17 in 1973, Dr.

4

Wynia, Dr. Virgil Ferree and William Walterskirschen, Ferree's attorney, met to discuss the appropriate placement of easements and access roads from the Wynias to the Ferrees and vice versa. The first easement went from Dr. Ferree to the Wynias across Lots 18 and 19, providing access to Lots 15, 16, 17, 18, 19, 20 and 21. The second easement went from the Wynias to the Ferrees across Lots 16 and 17 for access to Lots 15, 18, 19, 20 and 21. "The easements locate the roads in the SW1/2 of Lots 19, 18, 17, and 16 to approach from the Northwest." After the signing and recording of easements, Dr. Ferree and Dr. Wynia met on the property and Dr. Ferree instructed Dr. Wynia as to where to build the easement access road. The Wynias instructed Jim Herron to construct an access road across Lots 16, 17, 18 and 19 in the fall of 1973.

During summers after the access road was built, Wynias parked their 32 foot trailer on Lot 16 near the boundary of Lot 15. The trial court concluded that the Wynias could park their trailer in the road turnouts on Lot 16 without disturbing vehicle use on the road. It further concluded that Ferrees acquiesced in the trailer being parked on the roadway and it did not interfere with any use of the road by Ferree or Smith, the subsequent owner. Further facts will be presented as necessary.

Our standard of review of a district court's findings of fact is clear. Rule 52(a), M.R.Civ.P., provides in pertinent part:

> Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses...

5

In interpreting this rule, we have adopted the following three-part test:

> First, the Court will review the record to see if the findings are supported by substantial evidence. Second, if the findings are supported by substantial evidence we will determine if the trial court has misapprehended the effect of evidence. Third, if substantial evidence exists and the effect of the evidence has not been misapprehended, the Court may still find that "[A] finding is 'clearly erroneous' when, although there is evidence to support it, a review of the record leaves the court with the definite and firm conviction that a mistake has been committed."

Interstate Production Credit v. DeSaye (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287. (Citations omitted.)

To establish an easement by prescription, the party claiming an easement "must show open, notorious, exclusive, adverse, continuous and uninterrupted use of the easement claimed for the full statutory period. The statutory period is five years." Keebler v. Harding (1991), 247 Mont. 518, 521, 807 P.2d 1354, 1356. (Citation omitted.) See also; Downing v. Grover (1989), 237 Mont. 172, 175, 772 P.2d 850, 852.

### 1. WYNIAS v. EKMANS AND KELLENBERGER

Wynias contend they had perfected an easement by prescription across Ekmans' and Kellenberger's properties on the skid trail near the lake. They further state that they had established that their use was open, notorious, exclusive, continuous and uninterrupted, creating the presumption that their use was adverse. They believe there was insufficient evidence to show that their use was permissive, especially given that they established the presumption

6

of adverse use. Ekmans and Kellenberger counter that the presumption in this case is that the use is permissive.

"To be adverse, the use of the alleged easement must be exercised under a claim of right and not as a mere privilege or license revocable at the pleasure of the owner of the land; such claim must be known to, and acquiesced in by, the owner of the land." Keebler, 807 P.2d at 1356-1357. (Citation omitted.) "District courts sitting as fact finders occupy the best position to determine if the use was permissive or adverse." Granite County v. Komberec (1990), 245 Mont. 252, 258, 800 P.2d 166, 169.

Dr. Wynia described a neighborly and cordial relationship between himself and Dr. Ferree, the original owner of the subdivision. He testified to social visits by Dr. Ferree and wrote that Dr. Ferree had "been considerate with us in the past."

Perhaps most telling of all is Dr. Wynia's answer when Mr. Murray, attorney for the Ekmans and Kellenberger, asked "So you said, 'Doctor Ferree, I'd like to be able to continue to use that lower skid trail road, true?'" Dr. Wynia replied, "True." Dr. Ferree responded that "We'll talk about it. Bring an attorney out and we'll look at drawing up the easements." Dr. Wynia appears to be asking for continued permission to use the skid trail road. "The trier of fact is in the best position to hear the testimony and observe the witnesses and their demeanor.... Particularly where credibility of witnesses is involved, we give great weight to fact-findings of a district court." Scott v. Eagle Watch

7

Investments, Inc. (1991), 251 Mont. 191, 195, 828 P.2d 1346, 1349. "A use of a neighbor's land based upon mere neighborly accommodation or courtesy is not adverse and cannot ripen into a prescriptive easement. Thus where the use of a way by a neighbor was by express or implied permission of the owner, it was held that the continuous use of the way by the neighbor was not adverse and did not ripen into a prescriptive right." Wilson v. Chesttnut (1974), 164 Mont. 484, 491, 525 P.2d 24, 27.

This Court concludes that there was sufficient evidence for the trial court to conclude that the Wynias' use of the skid trail road was permissive from its inception. The trial court did not misapprehend the evidence nor was the finding of permissiveness clearly erroneous.

## 2. TACKE v. WYNIAS

Wynias claim that Tacke's easement was extinguished when Smith sold Lot 15 without reserving easement rights across Lots 18 and 19. This failure extinguishes any easement rights Smith may have had to cross Lots 16 and 17 according to the Wynias. However, this Court agrees with Tacke's argument that Smith's transfer of title did not extinguish the easement over Lots 16 through 19 to gain passage to Lot 15, but for different reasons.

When Wynias bought Lot 17 in 1973, they granted an easement to the Ferrees and their successors and assigns over and across Lots 16 and 17. "The second easement is for the purpose of providing access to Lot 15 and shall be over and across the Southwesterly

8

Half of Lots 16 and 17, and shall make its approach from the Northwest." The written easement was signed and recorded in August of 1973.

In November of 1985, the widowed Mrs. Ferree sold her lots in Lac Cygne Shores to William Smith. Smith sold Lots 18 and 19 to the Ekmans on July 7, 1988. Smith sold Lot 15 to Victor Tacke on August 16, 1989.

Wynias' argument that the sale of Lots 18 and 19 to the Ekmans and the sale of Lot 15 to Tacke without a reservation of easement extinguished any easement rights Tacke may have had through Lots 16 and 17 is without merit. The Ekmans have stated that Tacke may travel across Lots 18 and 19 to gain access to Lots 16 and 17. Once Tacke crosses Lots 18 and 19, he arrives at Lots 17 and 16. Tacke is able to traverse Lots 17 and 16 by virtue of the 1973 recorded easement from the Wynias to the Ferrees which states that:

> ROBERT E. WYNIA and WINONA CAROLE WYNIA, Husband and Wife, of Great Falls, Montana, do hereby give and grant unto VIRGIL D. FERREE, Trustee, and GLADYS I. FERREE, Trustee, of Kalispell, Montana, and to their successors and assigns, a roadway easement twenty feet (20 ft.) in width, and over and across the following described property situated in Lake County, Montana, to-wit:
>
> Lots 16 and 17 of Lac Cygne Shores, according to the map or plat thereof on file and of record in the office of the Clerk and Recorder, Lake County, Montana.
>
> It is understood this is a grant of two (2) separate road easements over and across Lots 16 and 17. ...The second easement is for the purpose of providing access to Lot 15 and shall be over and across the Southwesterly Half of Lots 16 and 17, and shall make its approach from the Northwest. (Emphasis added.)

The benefits of this recorded easement passed to Tacke as an

9

assignee to the Ferrees. Dr. Ferree bought the Lac Cygne property for the sole purpose of subdividing and selling the lots. He ensured that future residents of Lots 15, 18 and 19 would have access to their property through the written easement across Lots 16 and 17 recorded in 1973. By the same token, Dr. Ferree ensured that the Wynias would be guaranteed their easements across Lots 18 and 19 by the other written easement recorded in 1973 on the upper portion away from the lake. As an assignee of the Ferrees, Tacke has access across Lots 16 and 17 by virtue of the recorded easement 211576.

### 3. TACKE v. WYNIAS

Finally, Wynias argue that the trial court established an unreasonable location for Tacke's easement. Tacke claims that there are good reasons to locate the easement on the "trailer pad" road.

The trial court made the following findings of fact concluding the "trailer pad" road was the appropriate easement for Tacke across Lots 16 and 17:

> 21. That the easements were signed by Ferrees and Wynias and were recorded later in August of 1973. After the easements were signed, Dr. Ferree and Wynias met on the property and Dr. Ferree directed where he wanted the easement access road across Lots 19 and 18 located.

> 22. That during the fall of 1973, an access road across Lots 19, 18, 17, and 16 was constructed by Jim Herron at the instance and request of Wynias, who built the road in the most appropriate place for a road on the property.

> 23. That the existing access road across Lots 19, 18, 17, and 16 is the only road in the southwest half of

10

Lots 19, 18, 17, and 16, which approaches from the northwest and which provides access to Lot 15 of Lac Cygne Shores.

24. That the existing access road variously described by the parties as Easement No. 1, Easement No. 2, the upper road and the trailer pad road is located in accordance with the Walterskirschen map (Plaintiff's Exhibit 4) and Walterskirschen's letter of August 9, 1973 (Plaintiff's Exhibit 5), and is located where Dr. Ferree directed that it be located across Lots 16, 17, 18 and 19. It is located in the most appropriate place to build a road across Lots 16, 17, 18 and 19 and is the only road which provides access to Lot 15 of Lac Cygne Shores across the southwest half of Lots 19, 18, 17 and 16 and which approaches from the northwest.

. . .

27. That during the summer of nearly every year from 1974 to 1990 Wynias parked their 32' Silver Streak trailer on Lot 16 near the boundary of Lot 15 on that portion of the road which the Wynias described as the trailer pad road and which Tacke described as Easement No. 2 on Plaintiff's Exhibit 1. The Court finds that to be the same road as sketched by Bill Walterskirschen on Plaintiff's Exhibit 4 extending from the triangle on the boundary line between Lots 19 and 20 to a point within Lot 15, and which road is over and across the southwesterly half of Lots 16 and 17 approaching Lot 15 from the northwest as provided in the recorded easement, Court's Exhibit 2, and as actually constructed on the ground by Jim Herron.

. . .

31. That Wynias introduced a topographic map (Wynias' Exhibit 60) and proposed an alternative route for access to Lot 15 by means of a road between the existing 30' access road as it extends to the triangle on the boundary between Lots 19 and 20 and the existing "trailer pad" road. The Court finds said proposal to be totally unacceptable. The terrain is steep and rocky, the construction of an additional road at such location would be difficult, expensive and steep and would be extremely disruptive to Wynias' Lots 16 and 17. For similar reasons, the Court finds that access to Lot 15 cannot be had from the 30' access road as shown on the plat of Lac Cygne Shores (Court's Exhibit 1 and Wynias' Exhibit 23).

There was conflicting testimony about reasonable locations for Tacke's easement to Lot 15. Jim Herron, who built the "trailer

11

pad" road, stated that he built the road in the only place where it could be built "without creating where you couldn't get out. You'd have too steep a grade. This was about the natural part to get in there." R. J. Burggraf, a road contractor, was asked by Tacke to consider options for building road access to Lot 15 if Tacke did not have an easement at the "trailer pad" road and to provide cost estimates. Mr. Burggraf concluded that the "best spot for a road traversing Lot 16 and 17 to get to Vic Tacke's property" is the "trailer pad" road. The above testimony, along with other testimony and exhibits provide substantial evidence for the trial court to establish the easement at the "trailer pad" road. "Due regard is given the opportunity of the district court to judge the credibility of witnesses...and resolve conflicts or inconsistencies in testimony." Thomas v. Barnum (1984), 211 Mont. 137, 143-144, 684 P.2d 1106, 1110. (Citations omitted.)

This Court concludes that the trial court findings are supported by substantial evidence, the trial court did not misapprehend the effect of the evidence, and the findings are not clearly erroneous. AFFIRMED.

_____
Justice

We Concur:

_____
Chief Justice

John Conway Harrison

12

Karla M. Gray

Tom Trueweit

Justices

13