No. 03-524

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 383

TOMLIN ENTERPRISES, INC.,

      Plaintiff and Respondent,

  v.

RICK ALTHOFF,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone, Cause No. DV 01-1034
The Honorable Susan P. Watters, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Terry L. Seiffert, Attorney at Law, Billings, Montana

      For Respondent:

          W. Scott Green, Patricia D. Peterman, Patten Peterman Bekkedahl & Green,
Billings, Montana

Submitted on Briefs:  December 19, 2003

Decided:  December 28, 2004

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     Rick Althoff appeals the May 7, 2003, Judgment of the Montana Thirteenth Judicial District Court, Yellowstone County, in which the court granted Tomlin Enterprises, Inc. ("Tomlin") a permanent injunction, precluding Althoff from crossing Tomlin's property located at Section 6, Township 3 North, Range 31 East, PMM, in Yellowstone County, and ordering Althoff to pay Tomlin the sum of $930.30.  We affirm.

## ISSUE

¶2     We restate the issue as follows:  Did the District Court err when it concluded that clear and convincing evidence showed that Althoff's use of an easement across Tomlin's property was permissive based on neighborly accommodation, and that Althoff had not established a prescriptive easement across Tomlin's property under a claim of title?

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     Tomlin is a Montana corporation which owns Lots 1 through 18 of Section 6, Township 3 North, Range 31 East, in Yellowstone County ("Tomlin's Property").  Althoff is an individual who owns real property located at Section 7, Township 3 North, Range 31 East, in Yellowstone County ("Althoff's Property"), which lies adjacent to Tomlin's Property and consists of approximately 366 acres.  Althoff's Property has been used by Althoff and his family for a cattle operation and occasional recreational use since the family purchased the property in 1962.

¶4     The disputed property is a strip of land running through a portion of Tomlin's Property between Althoff's Property and 7-Mile Flat Road, measuring approximately 110

2

yards in length and 25 feet in width ("the Access"). Prior to 1972, this portion of Tomlin's Property was owned by the United States Government, Bureau of Land Management ("BLM"). On June 11, 1963, the BLM granted Althoff's parents a permit for a right-of-way to allow the Althoff family to use the Access to travel to their property. That permit ran with the land and expired on June 10, 1983.

¶5 On August 25, 1972, while still burdened by the 1963 permit, what is now Tomlin's Property was purchased by a private citizen. After a series of sales and transfers, it came to be owned by Tomlin on January 9, 1989. Following the expiration of the right-of-way permit in 1983, the Althoff family continued to use the Access.

¶6 There is no easement of record across Tomlin's Property in favor of Althoff. For several decades, the Access has been gated at both ends of Tomlin's Property. There is a gate in the fence where the Access leaves 7-Mile Flat Road and enters Tomlin's Property, and a gate in the fence where the Access leaves Tomlin's Property and enters Althoff's Property.

¶7 Earnest Harrison testified at trial that he leased what is now Tomlin's Property from approximately 1985 or 1986 until Tomlin purchased it in 1989, and was employed by Tomlin as a ranch manager from 1989 until 1997. Both Harrison and Althoff testified that there was never any dispute or hostility between Althoff and Harrison, Tomlin, or Tomlin's predecessors in interest regarding Althoff's use of the Access. Harrison and Althoff testified that Harrison never gave Althoff permission to use the Access and that Althoff never asked for permission. They both further testified that at various times, the Access gates were

3

locked, but that regardless of who locked the gates, Harrison and Althoff always shared the key or combination to the locks. Harrison testified that the gates were used to control livestock, and that they were usually locked during hunting season. Althoff testified that the gates were first installed to control cattle, but that he later began to lock the gates to prevent vandalism of items he had stored on his property.

¶8 Ron Amestoy, who leased Tomlin's Property from 1997 to 1998 and managed it from 1999 to 2000, testified that a dispute concerning Althoff's use of the Access did not arise until 1999, when Tomlin owner Tom Leon became concerned that Althoff had used the Access to transport a mobile home and that Althoff had given George Grossi permission to use the Access. Grossi, a friend of the Althoff family, testified that he had used the Access since 1975 for access to the Althoff Property, and that since 1994, he has used the Access to reach his own property which is located east of the Althoff Property.

¶9 Tomlin attempted to get Althoff to agree to define in writing Althoff's use of the Access. Failing in that endeavor, Tomlin chained and locked the gate on 7-Mile Flat Road and told Althoff that he must ask Tomlin's permission to use the Access. Althoff removed the lock and replaced it with one of his own. Tomlin replaced the lock. Althoff again removed and replaced the lock, and also deposited a pile of gravel near the Access. Tomlin then initiated this legal action, seeking an injunction against Althoff prohibiting trespass upon Tomlin's Property and enjoining Althoff from creating a road on the Tomlin Property, and further compensating Tomlin for damage caused by Althoff's trespassing and lock

4

removals. At around the same time, Althoff used a grader to spread the gravel pile across the Access.

¶10    At trial, Tomlin's general manager Joseph Hanser testified that Tomlin does not want the Access graveled because Tomlin does not want it to serve as a driveway, and because Tomlin is concerned about the introduction of noxious weeds to the property, as well as the general unsightliness of a graveled road. Hanser testified to the resulting damages that Tomlin suffered.

¶11    On February 12, 2002, the District Court entered a preliminary injunction limiting Althoff's access to historical use. Following a bench trial on February 24, 2003, the District Court entered its Findings of Fact, Conclusions of Law, and Order in which it concluded that Althoff does not have a prescriptive easement over the Access and that Tomlin is entitled to a permanent injunction prohibiting Althoff from crossing Tomlin's Property. The Court also ordered Althoff to compensate Tomlin for damages and costs. Judgment was entered May 7, 2003. From this Order and Judgment, Althoff timely appeals.

**STANDARD OF REVIEW**

¶12    This Court reviews the findings of a trial court sitting without a jury to determine if the court's findings are clearly erroneous. Rule 52(a), M.R.Civ.P. A district court's findings are clearly erroneous if they are not supported by substantial credible evidence, if the trial court has misapprehended the effect of the evidence, or if a review of the record leaves this Court with the definite and firm conviction that a mistake has been committed. *Albert v. Hastetter*, 2002 MT 123, ¶ 14, 310 Mont. 82, ¶ 14, 48 P.3d 749, ¶ 14 (citations omitted).

5

Additionally, in determining whether the trial court's findings are supported by substantial credible evidence, this Court must view the evidence in the light most favorable to the prevailing party. *Albert*, ¶ 14 (citation omitted). We review a district court's conclusions of law to determine whether those conclusions are correct. *Albert*, ¶ 14.

## DISCUSSION

¶13 Did the District Court err when it concluded that clear and convincing evidence showed that Althoff's use of an easement across Tomlin's property was permissive based on neighborly accommodation, and that Althoff had not established a prescriptive easement across Tomlin's property under a claim of title?

¶14 The District Court concluded that Althoff had met his initial burden of showing a presumption of adverse use of the Access, but then concluded that Tomlin had overcome that presumption. Althoff claims that the District Court incorrectly concluded that his use of the Access was by neighborly accommodation, because in order for there to be neighborly accommodation, there must be a showing of express or implied permission. In the case at hand, he claims, no express or implied permission to use the Access was granted. While the District Court pointed to the gates as evidence of permissive use, Althoff maintains the gates were put in place when access was granted by the BLM in 1963, and have remained in place since that time as an efficient way of controlling cattle.

¶15 Althoff points out that the Althoff family obtained a grant for the use of the Access from the BLM. He claims this grant gave his predecessors and him the exclusive use of the property over which the Access traversed. Althoff states that, although the government grant

6

expired in 1983, he continued to use the Access for the next 17 years. He claims that his post-1983 use of the Access was adverse, and thus cannot be deemed a permissive use of neighborly accommodation.

¶16    Tomlin responds that our case law supports the contention that gating a road located on private property provides strong evidence that the use of the road past the gate is permissive only. Tomlin points out that the Access had closed gates which served to keep the general public out. Although the gates were often locked, both Tomlin and its predecessors shared keys and combinations with Althoff so that he could use the Access even while the general public was kept out. Tomlin further notes that no discussion concerning permission to use the Access even took place until Althoff attempted to expand the neighborly accommodation beyond what Tomlin had allowed. Tomlin maintains that substantial credible evidence supports the District Court's finding and conclusion that Althoff used the Access courtesy of Tomlin's neighborly accommodation, and that this Court should not disturb a district court's findings if they are supported by substantial credible evidence, even if there also exists evidence to the contrary.

¶17    Tomlin points out that it is undisputed that the use of the Access was permissive up until the expiration of the government grant in 1983, and that the evidence supports a finding and conclusion that Althoff's use of the Access from 1983 through 2000, was permissive and not adverse. Thus, Tomlin maintains, since the District Court concluded that the use of the Access was permissive, Althoff's continuous use of the Access after the governmental grant expired could not ripen into a prescriptive right because Althoff's use was not adverse to the

7

property owner's. Tomlin points out, "In this case, the district court was convinced after listening to the testimony that Althoff's use was by the implied permission of the owners and the access was a neighborly accommodation."

¶18 In determining whether the use of a road was adverse, we have stated that neighborly accommodation is a form of permissive use which, by custom, does not require permission at every passing. *Heller v. Gremaux*, 2002 MT 199, ¶ 14, 311 Mont. 178, ¶ 14, 53 P.3d 1259, ¶ 14 (citing *Kessinger v. Matulevich* (1996), 278 Mont. 450, 457, 925 P.2d 864, 868). Therefore, use of a neighbor's land based upon mere neighborly accommodation or courtesy is not adverse and cannot ripen into a prescriptive easement, and the mere use of a way for the required statutory period is generally not sufficient to give rise to the presumption of a grant barring some circumstances or act, in addition to the use, which tends to indicate that the use was not merely permissive. *Heller*, ¶ 14 (citation omitted).

¶19 The District Court emphasized the presence of the gates along the Access as indications of permissive use, dedicating several of its findings to describing the positioning and use of those gates. We have held that, "the fact that the passage of a road has been for years barred by gates or other obstructions to be opened and closed by the parties passing over the land, has always been considered as strong evidence in support of a mere license to the public to pass over the designated way." *Heller*, ¶ 14 (quoting *Public Lands Access Association, Inc. v. Boone and Crockett Club Foundation, Inc.* (1993), 259 Mont. 279, 285, 856 P.2d 525, 528).

8

¶20 Althoff argues that his case is factually similar to *Albert*, in which we concluded that gates which were in place across an access road were intended to control livestock and were thus not an indication of permissive use. *Albert*, ¶ 39. However, in *Albert*, the parties testified that, when livestock was not present in the area, the gates were generally left open. *Albert*, ¶ 38. In the case at hand, Althoff and others testified that the gates were kept closed, and often locked, specifically to keep the public off of the property. Furthermore, as we stated in *Albert*, evidence of the use of the gates was one piece of evidence within the District Court's discretion to consider as to whether use of the access road in that case was permissive. *Albert*, ¶ 39.

¶21 Arguing that gates used to control cattle are not a showing of permissive use, Althoff further cites to *Parker v. Elder* (1988), 233 Mont. 75, 80, 758 P.2d 292, 294, in which we stated that evidence that gates were used to control cattle, rather than "to control travel over the road," was not sufficient to rebut the presumption that use of the road was prescriptive. However, this does not square with the facts in the case at hand, in which Althoff and others testified that the gates *were* used to control access to the property, and were often kept locked, with the keys or combination available to the owners of the respective properties.

¶22 The trier of fact is in the best position to hear and weigh the testimony of witnesses, and we thus give great weight to the findings of a district court. *Tacke v. Wynia* (1993), 258 Mont. 405, 409, 853 P.2d 87, 91 (citation omitted). Furthermore, in determining whether the trial court's findings are supported by substantial credible evidence, we will view the evidence in the light most favorable to the prevailing party. *Albert*, ¶ 14 (citation omitted).

9

¶23 The District Court weighed the evidence and the credibility of the witnesses and issued findings which our review of the record supports. The District Court concluded that Althoff made a showing which gave rise to a presumption of adverse use, but Tomlin met its burden in establishing, by clear and convincing evidence, that Althoff's use was permissive, thereby overcoming the presumption of adversity. The District Court determined that Althoff's use of the Access was a neighborly accommodation, and therefore, a permissive use. In the case at hand, the District Court had ample evidence to support its determination that the use of the Access by Althoff was permissive. Our review of the record convinces us that we need not disturb the findings or conclusions of the District Court.

## CONCLUSION

¶24 For the foregoing reasons, we affirm the Judgment of the District Court.

/S/ PATRICIA O. COTTER

We Concur:

/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ JIM REGNIER
/S/ W. WILLIAM LEAPHART