05-386

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 145

HARRY BLAZER,

      Plaintiff and Appellee,

   v.

LYLE WALL, Trustee of the Sugar Land Trust
Dated 04/09/01; ELAINE COMFORT-WALDHER;
and KEVIN WALDHER,

      Defendants and Appellants.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DV 2003-508(C)
Honorable Stewart E. Stadler, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

            James C. Bartlett, Attorney at Law, Kalispell, Montana

      For Appellee:

            Randall S. Ogle, Ogle & Worm, PLLP, Kalispell, Montana

Submitted on Briefs:  February 8, 2006

Decided:  April 29, 2008

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1     Lyle Wall, as trustee of the Sugar Shack Land Trust, Elaine Comfort-Waldher, and Kevin Waldher (collectively, "the Waldhers") appeal from the final judgment entered by the District Court for the Eleventh Judicial District, Flathead County, in favor of Harry Blazer. We reverse.

## BACKGROUND

### I.     The Properties

¶2     The properties at issue in this case are located along Whitefish Stage Road between Kalispell and Whitefish, Montana. They formerly were part of a larger parcel of land purchased by Jack L. Davis and James McCready in 1972. In 1979, Davis and McCready subdivided a portion of the land into seven tracts as described and depicted on Certificate of Survey No. 4446 ("COS 4446"), which was filed January 12, 1979, as Instrument No. 620, records of Flathead County, Montana. Davis assumed ownership of the two westernmost tracts (Tracts 1 and 4), and McCready assumed ownership of the remaining five tracts. An excerpt of COS 4446, depicting Tracts 1, 2, 3, and 4, is attached as an appendix to this Opinion.

¶3     Tract 1 lies directly north of Tract 4. A dotted line is depicted on COS 4446 30 feet south of the northern boundary of Tract 1 and running parallel thereto. Thirty feet from the western boundary of Tract 1, the dotted line turns south and runs parallel to the western boundaries of Tracts 1 and 4. The dotted line continues to a point 30 feet south of Tract 4 and then turns west. The area between the dotted line and the aforementioned boundaries of Tracts 1 and 4 is labeled "30' EASEMENT ROAD."

2

¶4     The seven tracts and the dotted line depicted on COS 4446 are arranged as follows (not to scale):



¶5     Historically, Davis used the 30-foot-wide strip of land as a farming road for accessing the western part of Tract 4 and other property he owned to the south and west of Tract 4.  He preferred this route due to the sandy soil and steep grade of Tract 4.  However, the historical road has since become overgrown.  The portion of the road traversing Tract 4 is presently being farmed; and, with a number of exceptions noted below, the portion of the road traversing Tract 1 has pine trees and grass growing on it.

**II.     The Conveyances**

¶6     In October 1987, Davis conveyed Tract 1 of COS 4446 to Robert H. and Connie L. Lockman.  The face of the Davis-Lockman deed contains the following description of the real property being conveyed:

> A tract of land located in Government Lot 4, Section 33, Township 30 North, Range 21 West, Principal Meridian, Montana, Flathead County, Montana, and more particularly described as follows:

[Description in metes and bounds.]

Tract 1 of Certificate of Survey No. 4446.

SUBJECT TO 30 foot road easement as shown on Certificate of Survey No. 4446, records of Flathead County, Montana.

No other property and no explicit reservations are recited in the deed.

¶7 Through a series of subsequent conveyances, title to Tract 1 passed to Elaine Comfort-Waldher in April 1999 and, ultimately, to Lyle Wall, as trustee of the Sugar Shack Land Trust, in April 2001.[1] All of the deeds in these conveyances refer to "Tract 1 of Certificate of Survey No. 4446." The Waldhers, whose living trusts are the beneficiaries of the Sugar Shack Land Trust, have resided on Tract 1 since 1999.

¶8 In March 1989, Davis conveyed Tract 4 of COS 4446 to Ronald E. and Lavera M. Foster. In May 2003, the Fosters conveyed the western five acres of Tract 4 to Blazer in exchange for five acres owned by Blazer to the south of Tract 4. Both the Davis-Foster deed and the Foster-Blazer deed refer to COS 4446.

¶9 Davis also owned property located to the south and west of, and contiguous to, Tract 4. This "southwest property" is not depicted or identified on COS 4446. Davis conveyed the southwest property to Blazer in August 1989. The Davis-Blazer deed refers to Certificate of Survey No. 4268 and Certificate of Survey No. 2078.

---

[1] The subsequent Tract 1 conveyances are as follows: the Lockmans to Lawrence F. and Rosalia R. Rooney in January 1995, the Rooneys to Brian C. Rooney in April 1995, Brian C. Rooney to Elaine Comfort-Waldher in April 1999, Elaine Comfort-Waldher to Manley Financial Group, Inc., in April 2000, and Manley Financial Group, Inc., to the trustee of the Sugar Shack Land Trust Dated 4-09-01 in April 2001.

¶10　　The properties purchased by Blazer from Davis and the Fosters are arranged as follows (not to scale):



5

### III.    The Instant Action

¶11    Shortly after purchasing Tract 1 in 1999, the Waldhers placed a manufactured home near the southwest corner of the property.  Then, over the next two years, they constructed a large metal shop and two retaining walls just west of their home.  They also built a gravel driveway from Whitefish Stage Road to their home and shop.  (The course of this driveway roughly tracks the dotted line depicted on Tract 1 of COS 4446.)  According to a December 2003 encroachment survey prepared at Blazer's request, both of the retaining walls and approximately half of the shop, as well as an electric transformer and a propane tank, lie within the 30-foot-wide strip of land along the western boundary of Tract 1.

¶12    Blazer initiated the instant action on September 23, 2003, seeking a declaration that he has an express easement for ingress and egress purposes along the northern and western boundaries of Tract 1.  He also requested an injunction requiring the Waldhers to remove all obstructions interfering with his use of the easement.  The Waldhers answered the complaint and denied that such an easement exists.  They also raised estoppel, waiver, statute of limitations, laches, acquiescence, and unclean hands as defenses, alleging that Blazer and his predecessors in interest (the Fosters) had watched and observed the construction of the shop in the vicinity of the alleged easement.  Finally, the Waldhers asserted a counterclaim based on adverse possession.

¶13    Blazer filed a motion for summary judgment, arguing that under this Court's decisions in *Bache v. Owens*, 267 Mont. 279, 883 P.2d 817 (1994), *Halverson v. Turner*, 268 Mont. 168, 885 P.2d 1285 (1994), and *Ruana v. Grigonis*, 275 Mont. 441, 913 P.2d

6

1247 (1996), an easement was reserved over Tract 1 along the 30-foot-wide strip of land depicted on COS 4446 when, in 1987, Davis conveyed Tract 1 to the Lockmans by a deed which referenced COS 4446. Blazer initially asserted that this easement was for the benefit of Tract 4 *and* Davis's property to the south and west of Tract 4. However, in his reply brief in support of his motion for summary judgment, Blazer clarified that his right to enforce an easement across Tract 1 "is not dependent on, or derivative of" the Foster-Blazer land swap by which Blazer acquired the western five acres of Tract 4. He took the position that his present ownership of a portion of Tract 4 is "immaterial to the analysis" and "[not] the basis of this lawsuit," since his easement rights as successor in interest to Davis's property to the south and west of Tract 4 "are plenty enough to sustain his position in this action." As noted above, Davis's southwest property is not depicted or identified on COS 4446; however, Blazer posited that the reference to COS 4446 in the Davis-Lockman deed was sufficient to reserve an easement across Tract 1 for the benefit of "the property [Davis] retained to himself"—including property not identified on COS 4446 or in the Davis-Lockman deed—and that this easement passed to Blazer when he purchased the southwest property from Davis in 1989.

¶14  The Waldhers responded that, "looking at COS 4446, it is impossible to decide, as a matter of law, than an easement exists for the benefit of any one or more particular tracts." They argued that in order to reserve an easement under *Bache, Halverson,* and *Ruana,* the grantee of the servient estate must have knowledge of the easement's use or necessity, and the identities of the dominant and servient estates, therefore, must be included on the certificate of survey.

7

¶15     The District Court ruled that the Davis-Lockman deed and COS 4446 "create[d] the easement alleged by [Blazer]." The court reasoned that "[t]he COS was properly recorded, and it identifies the easement clearly and specifically." However, the court concluded that there were genuine issues of material fact as to whether the easement had been extinguished by adverse possession. Accordingly, the court denied Blazer's motion.

¶16     The case proceeded to a nonjury trial on September 28, 2004, at which time the District Court heard testimony from Davis, the Fosters, Blazer, the Waldhers, and the surveyor who had created the December 2003 encroachment survey. Davis testified that he had intended to create an easement across Tract 1 and Tract 4 to provide access, "predominately for farming [purposes]," to "the top of the hill" (which he explained was at or about the southwest corner of Tract 4) and his property to the south and west of Tract 4. He further testified that he had entrusted his attorneys to prepare documents using the language appropriate under the law to accomplish this result. Blazer testified, among other things, as to his use of the easement road depicted on COS 4446. He stated that in the past, he was able to walk, ride a mountain bike or a motorcycle, and drive a vehicle on this route from Whitefish Stage Road to the upper portion of Tract 4, but that he no longer could drive a vehicle along the western boundary of Tract 1 due to the Waldhers' shop and the other obstructions. He indicated, however, that he can still drive a vehicle up to Tract 4 from the other direction, i.e., he comes up from the southwest property. On the matter of farming Tract 4 in recent years, the Fosters both testified that the farmer has accessed Tract 4 using the Fosters' driveway off Whitefish Stage Road and that the farming equipment is able to go up and down the hill on Tract 4.

8

¶17 At the conclusion of the testimony, the court expressed uncertainty as to whether the easement road depicted over Tract 1 of COS 4446 could legally benefit Blazer's off-survey property to the south and west of Tract 4. Thus, the parties submitted post-trial briefs on this issue. Blazer asserted that "the only logical conclusion is that the easement is for the benefit of and appurtenant to the real property owned by Blazer to the south and west of Tract 4." He reasoned that "[t]he only logical reason for an easement across Tract 4 was to gain access, ingress and egress to and from property beyond Tract 4." He argued that "[i]f the Court were to rule that the easement is not for the benefit of property beyond Tract 4, we would be left with the absurd situation that the easement is only for the benefit of and appurtenant to Tract 4, which did not need the easement in the first place." Thus, Blazer emphasized that "the only logical conclusion is that the easement is for the benefit of and appurtenant to the other real property owned by [Davis] when the easement was created, which is situated to the south and west of Tract 4, and which is now owned by [Blazer]." The Waldhers agreed that "it appears that Tract 4 and Tract 1 were equally to be servient estates for the benefit of property lying outside of the certificate of survey," but they maintained that the owner of a parcel to be burdened with an easement must know from the documents of conveyance the identity of the parcel(s) to be benefited by the easement and the extent of that benefit. Thus, because Blazer's property to the south and west of Tract 4 is not identified on COS 4446, the Waldhers argued that the property could not benefit from the easement road depicted over Tract 1.

¶18 The District Court entered its findings of fact and conclusions of law on February 14, 2005. The court found that Davis had intended to create an easement along the north

9

and west boundaries of Tract 1 for the benefit of Tract 4 and his property to the south and west of Tract 4. Citing *Bache*, the court concluded that "the transaction documents concerning the sale of Tract 1 of COS No. 4446, by Davis to Lockman clearly establish an easement over Tract 1 for the benefit and appurtenant to Tract 4 and the other lands owned by Davis lying to the South and West of Tract 4 of COS No. 4446." The court further concluded that the easement had not been extinguished by adverse use for the statutory period; that the statute of limitations set forth in § 27-2-207, MCA, did not apply in this case; that the Waldhers' arguments based on laches, estoppel, acquiescence, delay, and consent by implication "were not established by the evidence and do not apply to this case"; that Blazer was entitled to an injunction requiring the Waldhers to remove the encroachments constructed within the easement; and that Blazer was entitled to recover his costs. The court entered judgment accordingly.

¶19    The Waldhers filed a motion under M. R. Civ. P. 52(b) to amend the court's findings and judgment on the ground that an easement established under *Bache* cannot benefit "some other nearby or far away parcel" not shown on the referenced certificate of survey. Alternatively, the Waldhers reiterated a previous request that the court explicitly confine use of the easement to farming and agricultural purposes on Tract 4 only. Finally, they challenged Blazer's requests for one-half of the Settlement Master fee and $411.77 for trial exhibits. The motion was denied by operation of law. *See* M. R. Civ. P. 52(d). The Waldhers now appeal.

## ISSUES

¶20    The Waldhers raise four issues on appeal, which we restate as follows:

1. Did the District Court err in concluding that Davis created an express easement across Tract 1 of COS 4446 for the benefit of Tract 4 and Davis's off-survey property to the south and west of Tract 4?

2. Assuming that such an easement was created, did the District Court err in not defining its use and scope?

3. Did the District Court err in denying relief under the Waldhers' defenses of laches, abandonment, acquiescence, and estoppel?

4. Is Blazer entitled to the Settlement Master fee and the trial-exhibits expense enumerated in his Bill of Costs?

¶21 Because we reverse the District Court's judgment on Issue 1, we do not address Issues 2, 3, and 4.

**STANDARDS OF REVIEW**

¶22 In an action tried without a jury, we review the district court's findings of fact under the clearly erroneous standard. M. R. Civ. P. 52(a). A district court's findings of fact are clearly erroneous if they are not supported by substantial credible evidence, if the court misapprehended the effect of the evidence, or if a review of the record leaves this Court with the definite and firm conviction that a mistake has been made. *Tomlin Enterprises, Inc. v. Althoff*, 2004 MT 383, ¶ 12, 325 Mont. 99, ¶ 12, 103 P.3d 1069, ¶ 12. We review a district court's conclusions of law de novo, determining whether the court's interpretation and application of the law is correct. *Micklon v. Dudley*, 2007 MT 265, ¶ 8, 339 Mont. 373, ¶ 8, 170 P.3d 960, ¶ 8; *Giambra v. Kelsey*, 2007 MT 158, ¶ 28, 338 Mont. 19, ¶ 28, 162 P.3d 134, ¶ 28.

11

## DISCUSSION

¶23   ***Did the District Court err in concluding that Davis created an express easement across Tract 1 of COS 4446 for the benefit of Tract 4 and Davis's off-survey property to the south and west of Tract 4?***

## I.   Basic Easement Principles

¶24   An easement is a nonpossessory interest in land—a right which one person has to use the land of another for a specific purpose or a servitude imposed as a burden upon the land. *Burleson v. Kinsey-Cartwright*, 2000 MT 278, ¶ 14, 302 Mont. 141, ¶ 14, 13 P.3d 384, ¶ 14; *Kuhlman v. Rivera*, 216 Mont. 353, 358, 701 P.2d 982, 985 (1985). An easement may be "appurtenant" or "in gross." An easement appurtenant is one that benefits a particular parcel of land, i.e., it serves the owner of that land and passes with the title to that land. The benefited parcel is known as the "dominant" tenement or estate, and the burdened parcel is termed the "servient" tenement or estate. *See* § 70-17-103, MCA; *Burleson*, ¶ 16; *Leichtfuss v. Dabney*, 2005 MT 271, ¶ 6 n. 1, 329 Mont. 129, ¶ 6 n. 1, 122 P.3d 1220, ¶ 6 n. 1; Jon W. Bruce & James W. Ely, Jr., *The Law of Easements and Licenses in Land* § 1:1, at 1-5 to 1-6 (2008). An easement appurtenant must have both a dominant tenement and a servient tenement. *See Thompson on Real Property* vol. 7, § 60.02(f)(1), at 469 (David A. Thomas ed., 2d Thomas ed., 2006). An easement in gross, by contrast, benefits the holder of the easement personally, i.e., not in connection with his or her ownership or use of a specific parcel of land. Thus, with an easement in gross, no dominant tenement exists and the easement right cannot pass with the title to any land. *See Leichtfuss*, ¶ 6 n. 1; Bruce & Ely, *The Law of Easements and Licenses in Land* § 1:1, at 1-6; *Thompson on Real Property* § 60.02(f)(2), at 469.

12

¶25 In the case at hand, Blazer claims an easement appurtenant. The alleged servient tenement is Tract 1. As for the dominant tenement, Blazer stated a number of times in the District Court that he was asserting easement rights only as the owner of Davis's off-survey property to the south and west of Tract 4. Likewise on appeal, Blazer states that "[t]he rights Blazer asserts to [sic] do not arise from the Fosters, or from the property which Blazer acquired from the Fosters in 2003" (i.e., the western five acres of Tract 4). Rather, according to Blazer, "the dominant estate here" is "Davis' southern properties," and "the easement rights he asserts stem from that acquisition [directly from Davis]." Thus, one alleged dominant tenement is Davis's (and now Blazer's) off-survey property to the south and west of Tract 4. In addition, notwithstanding Blazer's articulated basis for this lawsuit, the District Court ruled that an easement exists "over Tract 1 for the benefit and appurtenant to *Tract 4* and the other lands owned by Davis lying to the South and West of Tract 4" (emphasis added). The Waldhers have appealed from this judgment and, on appeal, contend that no such easement was created. Accordingly, it is necessary to consider Tract 4 as an alleged dominant tenement as well.

¶26 An easement cannot be created except by an instrument in writing, by operation of law, or by prescription. *See Burleson*, ¶ 14; *Ruana*, 275 Mont. at 447, 913 P.2d at 1251. We have recognized the creation of easements by express grant, reservation, exception, or covenant; by implication from necessity or a prior existing use; and by prescription. *See e.g. Kuhlman*, 216 Mont. at 359, 701 P.2d at 985; *Woods v. Houle*, 235 Mont. 158, 160-62, 766 P.2d 250, 252 (1988); *Big Sky Hidden Village Owners Ass'n v. Hidden Village*, 276 Mont. 268, 276-78, 915 P.2d 845, 850-51 (1996); *Albert G. Hoyem Trust v.*

13

*Galt*, 1998 MT 300, ¶¶ 17, 22-29, 292 Mont. 56, ¶¶ 17, 22-29, 968 P.2d 1135, ¶¶ 17, 22-29; *Burleson*, ¶¶ 16-17. Here, Blazer does not claim an easement based on necessity, prior existing use, or prescription. Indeed, he expressly disclaimed those theories in his reply brief in support of his motion for summary judgment. Rather, he claims an easement based on express reservation in the Davis-Lockman transaction documents.

¶27 A grantor may expressly reserve an easement over granted land in favor of retained land by using appropriate language in the instrument of conveyance. *See e.g. Burleson*, ¶¶ 7, 17; *Reichle v. Anderson*, 284 Mont. 384, 388-89, 943 P.2d 1324, 1327 (1997); *see also* 25 Am. Jur. 2d *Easements and Licenses* § 16 (2004) ("An express easement by reservation arises when a property owner conveys part of his or her property to another, but includes language in the conveyance reserving the right to use some part of the transferred land as a right-of-way."). Alternatively, an easement may be expressly reserved by referring in the instrument of conveyance to a recorded plat or certificate of survey on which the easement is adequately described. *See e.g. Bache*, 267 Mont. at 286, 883 P.2d at 822; *Halverson*, 268 Mont. at 173-74, 885 P.2d at 1289.

¶28 Here, there is no language in the Davis-Lockman deed expressly "reserving" an easement. The deed contains a description of the real property being conveyed in metes and bounds, immediately followed by the words "Tract 1 of Certificate of Survey No. 4446," which is in turn followed by the clause, "SUBJECT TO 30 foot road easement as shown on Certificate of Survey No. 4446." In *Bache*, we observed that " 'subject to' language in a document of conveyance does not create an easement." *Bache*, 267 Mont. at 286, 883 P.2d at 821 (citing *Wild River Adventures v. Board of Trustees*, 248 Mont.

397, 401, 812 P.2d 344, 346-47 (1991)); *accord Ruana*, 275 Mont. at 449, 913 P.2d at 1252; *Kelly v. Wallace*, 1998 MT 307, ¶ 51, 292 Mont. 129, ¶ 51, 972 P.2d 1117, ¶ 51. As we explained in *Wild River*:

> The words "subject to" used in their ordinary sense, mean subordinate to, subservient to or limited by. There is nothing in the use of the words "subject to", in their ordinary use, which would even hint at the creation of affirmative rights or connote a reservation or retention of property rights. "Subject to" wording is commonly used in a deed to refer to existing easements, liens, and real covenants that the grantor wishes to exclude from warranties of title.

*Wild River*, 248 Mont. at 401, 812 P.2d at 346-47 (citations omitted). Thus, the "subject to" clause in the Davis-Lockman deed did not create or reserve easement rights in Davis and his successor in interest (Blazer). *Ruana*, 275 Mont. at 449, 913 P.2d at 1252-53.

¶29 Given that there is no language in the Davis-Lockman deed expressly reserving an easement, Blazer relies on the reference in the deed to "Tract 1 of Certificate of Survey No. 4446." The Waldhers argue, however, that COS 4446 does not satisfy the requisites of this Court's easement-by-reference doctrine. Before addressing the parties' specific arguments, therefore, it is useful to review this doctrine.

II.     **Easements Created by Reference to a Plat or Certificate of Survey**

¶30 In *Majers v. Shining Mountains*, 219 Mont. 366, 711 P.2d 1375 (1986), Shining Mountains acquired and subdivided a 7,000-acre ranch. In order to sell the lots, Shining Mountains prepared and recorded subdivision plats which assigned a number to each lot and designated common areas and roadways. The purchase and sale contracts prepared by Shining Mountains specifically referred to the recorded plats. *See Majers*, 219 Mont. at 367, 711 P.2d at 1376. On these facts, we held that the purchasers had acquired private

15

easements for the designated uses. *See Majers*, 219 Mont. at 371, 711 P.2d at 1378. In so doing, we observed that selling lots with reference to a map or plat designating streets, parks, or other open areas creates an implied covenant that the streets, parks, or other open areas exist and shall be used in the manner designated. *See Majers*, 219 Mont. at 370-71, 711 P.2d at 1377-78. The rationale for this rule, we noted, is " 'the use made of the plat in inducing the purchasers.' " *Majers*, 219 Mont. at 371, 711 P.2d at 1378 (quoting *Ute Park Summer Homes Ass'n v. Maxwell Land Grant Co.*, 427 P.2d 249, 253 (N.M. 1967)). More specifically, as the *Ute Park* court explained:

> [A] grantor, who induces purchasers, by use of a plat, to believe that streets, squares, courts, parks, or other open areas shown on the plat will be kept open for their use and benefit, and the purchasers have acted upon such inducement, is required by common honesty to do that which he represented he would do.

*Ute Park*, 427 P.2d at 253.

¶31    In *Benson v. Pyfer*, 240 Mont. 175, 783 P.2d 923 (1989), we reaffirmed that selling lots with reference to a map or plat may create an easement benefiting the purchasers. We observed that under § 76-3-304, MCA, when land is sold with reference to a properly recorded plat, the plat becomes part of (i.e., is incorporated into) the document conveying the interest in land. *See Benson*, 240 Mont. at 179, 783 P.2d at 925. The effect of this statutory provision, we reasoned, is to create an easement for the purchaser's benefit with respect to improvements represented on the plat. *See Benson*, 240 Mont. at 179, 783 P.2d at 925 (citing *Majers*, 219 Mont. at 370, 711 P.2d at 1377).

¶32    Likewise, in *Pearson v. Virginia City Ranches Ass'n*, 2000 MT 12, 298 Mont. 52, 993 P.2d 688, the developers of the Virginia City Ranches Subdivision filed a plat which

16

clearly depicted and labeled a bridle path easement crossing the subdivision. *See Pearson*, ¶¶ 10, 17. The Pearsons sought a declaratory judgment that this bridle path easement existed for the use of all lot owners in the subdivision and an injunction restraining the defendants from obstructing the easement. *See Pearson*, ¶ 1. Although the deeds by which the defendants had taken title to their respective lots referred to the plat, the defendants nevertheless contended that these transaction documents did not create the claimed easement. *See Pearson*, ¶¶ 10, 17. We rejected this contention. We reiterated that "where land is sold with reference to a map or plat showing a park or like open area, the purchaser acquires a private right, generally referred to as an easement, that such area shall be used in the manner designated." *Pearson*, ¶ 19 (alteration, citations, and internal quotation marks omitted). We also stated that "an easement arises when a purchaser's deed refers to a plat where an easement is depicted and labeled." *Pearson*, ¶ 26. Accordingly, we concluded that a bridle path easement had been created for the use of all lot owners in the subdivision because the purchasers' deeds referred to a recorded plat that clearly depicted and labeled this easement. *See Pearson*, ¶¶ 1-27.

¶33    We applied these principles in favor of the sellers in *Bache v. Owens*, 267 Mont. 279, 883 P.2d 817 (1994). At issue in that case was a 33.64-acre tract of land owned by the Baches. They agreed to sell 2.42 acres (Tract 2) to Owens and to retain the remaining 31.22 acres (Tract 1). The 1988 deed described the property being conveyed by metes and bounds and then referred to the property conveyed as "Tract 2 shown on Certificate of Survey No. 1657." Certificate of Survey No. 1657, in turn, provided legal descriptions and a scaled drawing of the boundaries of Tracts 1 and 2. In addition, the certificate of

17

survey depicted a dotted line 30 feet east of, and parallel to, the western boundary of Tract 2. The dotted line extended from the northern boundary of Tract 2 to the southern boundary of Tract 2. The area between the dotted line and the western boundary of Tract 2 was labeled "P.R.E.," which the legend identified as "private roadway easement." *See Bache*, 267 Mont. at 281-82, 291, 883 P.2d at 819, 823.

¶34 The Baches asserted that by these transaction documents, they had reserved an easement across Tract 2 for the benefit of Tract 1. We agreed. Citing *Benson*, 240 Mont. at 179, 783 P.2d at 925, and § 76-3-304, MCA, we observed that "reference in documents of conveyance to a plat which describes an easement establishes the easement." *Bache*, 267 Mont. at 283, 883 P.2d at 820; *see also Bache*, 267 Mont. at 285, 883 P.2d at 821 ("[A] map or plat incorporated into an instrument of conveyance can establish an easement." (citing *Majers*, 219 Mont. at 371, 711 P.2d at 1378)). We further observed that Certificate of Survey No. 1657 "identifies the easement clearly and specifically" with the dotted line and the label "private roadway easement," and that it "was filed with the county clerk and recorder, as required by law." *Bache*, 267 Mont. at 286, 883 P.2d at 822. We held, therefore, that the transaction documents established an easement in favor of Tract 1 along the western edge of Tract 2, as described in the certificate of survey. *Bache*, 267 Mont. at 286, 883 P.2d at 822.

¶35 We reached the same conclusion in *Halverson v. Turner*, 268 Mont. 168, 885 P.2d 1285 (1994). That case involved two adjoining tracts of land owned by the parties' predecessor in interest, Dahlia Halverson. In 1987, Dahlia transferred the western tract to Shirley Turner while retaining the eastern tract. The deed referred to a recorded

certificate of survey that showed a 30-foot-wide road easement extending from the northeast corner of Turner's tract westerly for a distance of 188.52 feet. This easement was to provide access from Dahlia's retained and otherwise-landlocked tract to a street running north from the northern boundary of Turner's tract. *See Halverson*, 268 Mont. at 170-71, 885 P.2d at 1287.

¶36　In analyzing these transaction documents, we observed that a land description is a necessary inclusion in an instrument conveying title so that the extent of the claim to the property may be determined, and a reference to a map or plat may be included to express, confirm, or amplify the land description. *See Halverson*, 268 Mont. at 172, 885 P.2d at 1288. Furthermore, when land is sold with reference to a properly recorded plat, the plat becomes part of the instrument conveying the interest in the land. *See Halverson*, 268 Mont. at 173, 885 P.2d at 1289. Finally, reference in documents of conveyance to a plat which describes an easement establishes the easement, but in determining the existence of an easement by reservation in the documents of conveyance, it is necessary that the grantee of the property being burdened by the servitude have knowledge of its use or its necessity. *See Halverson*, 268 Mont. at 172, 173, 885 P.2d at 1288, 1289. Applying these principles, we noted that although the description of the property being conveyed by the Dahlia-Turner deed did not contain language expressly reserving an easement to Dahlia, it did refer to the recorded certificate of survey which "clearly show[ed]" and "adequately described" the 30-foot-wide road easement. *See Halverson*, 268 Mont. at 172, 173, 885 P.2d at 1288, 1289. We held that in this manner, Dahlia had reserved an

19

easement over Turner's tract for the benefit of Dahlia's tract. *See Halverson*, 268 Mont. at 174, 885 P.2d at 1289.

¶37   By contrast, the 1968 plat at issue in *Tungsten Holdings, Inc. v. Parker*, 282 Mont. 387, 938 P.2d 641 (1997), depicted a meandering strip of land 40 feet wide and approximately 2,700 feet long, which was identified simply as "lot 34." This parcel resembled a roadway, and the district court found that there was "no other conceivable purpose a parcel of this configuration . . . could reasonably serve." Yet, nothing in the plat specifically identified lot 34 as such. *See Tungsten Holdings*, 282 Mont. at 388-89, 938 P.2d at 642. Thus, we held that the mere fact that lot 34's long and narrow configuration gave it "the appearance of a roadway" or that the developers "may have intended it as [a] roadway" was not sufficient to create a road easement. *See Tungsten Holdings*, 282 Mont. at 390, 938 P.2d at 642-43. We explained that "[e]asements by reservation must be created or reserved in writing" and "Tungsten can point to no deed or plat which contains any language dedicating or identifying lot 34 as a roadway." *Tungsten Holdings*, 282 Mont. at 390, 938 P.2d at 643.

¶38   We discussed an important limitation on the easement-by-reference doctrine in *Ruana v. Grigonis*, 275 Mont. 441, 913 P.2d 1247 (1996). The properties at issue in that case were split from single ownership in 1977 into a northern tract and a southern tract. Later, the successors in interest to the northern tract claimed that an easement existed for their benefit over the southern tract. However, the language of the 1977 deed did not create or reserve this easement, and the certificate of survey to which the 1977 deed referred did not depict this easement either. *See Ruana*, 275 Mont. at 444-45, 448-49,

20

913 P.2d at 1249-50, 1252-53. Although subsequent deeds subdividing the southern tract into smaller parcels referred to certificates of survey that did clearly depict and specifically identify the claimed easement, *see Ruana*, 275 Mont. at 449, 450, 913 P.2d at 1252, 1253, we noted that under *Bache* and *Halverson*, "an easement by reservation can be established when, *in conjunction with a division of land*, the subject easement is shown on the certificate of survey and the certificate of survey is referred to and incorporated in the deed of conveyance," *Ruana*, 275 Mont. at 449, 913 P.2d at 1253 (emphasis added). Thus, we held that the 1977 transaction documents which split the northern and southern tracts from single ownership were "decisive," *Ruana*, 275 Mont. at 448, 913 P.2d at 1252; and because these documents did not describe the claimed easement, we concluded that the northern tract did not benefit from this easement over the southern tract, *see Ruana*, 275 Mont. at 450-51, 913 P.2d at 1253-54.

¶39    We addressed a related restriction on the doctrine in *Kelly v. Wallace*, 1998 MT 307, 292 Mont. 129, 972 P.2d 1117. The plaintiffs claimed that references to an easement in the deeds of conveyance between the defendants' predecessors in interest and the defendants were effective as a matter of law to reserve an easement in favor of the plaintiffs. *See Kelly*, ¶ 47. We disagreed, explaining that while "[a]n easement by reservation may be established by reference in a document of conveyance to a recorded COS which adequately describes the easement," "creation of an easement by reservation in [this] manner requires that the grantor be a party to the conveyance and that he intend to reserve his own previously-held right to use the servient estate after he sells the divided parcel." *Kelly*, ¶ 48. We noted that we may depart from the general rule that an

21

easement cannot be created in favor of a stranger to the deed in order to give effect to the grantor's intent to benefit a nonparty. *See Kelly*, ¶ 49 (citing *Medhus v. Dutter*, 184 Mont. 437, 444, 603 P.2d 669, 673 (1979)). However, we emphasized that such intent must be "clearly shown," *see Kelly*, ¶ 49, and we held that express depiction of an easement on a referenced plat is not sufficient to demonstrate the grantor's intent to create an easement for the benefit of a nonparty, *see Kelly*, ¶ 51. *See also Loomis v. Luraski*, 2001 MT 223, ¶¶ 27-37, 306 Mont. 478, ¶¶ 27-37, 36 P.3d 862, ¶¶ 27-37.

¶40 To summarize, our cases have recognized the creation of an easement where the deed explicitly referred to a recorded plat or certificate of survey on which the subject easement was adequately described. However, express depiction of an easement on a referenced plat or certificate of survey is not sufficient, in and of itself, to create an easement for the benefit of a stranger to the deed. In addition, an easement by reservation may be established only when the dominant and servient estates are split from single ownership.

¶41 An easement created in this manner—i.e., by reference in an instrument of conveyance to a plat or certificate of survey on which the easement is adequately described—must arise expressly, not by implication. In *Albert G. Hoyem Trust v. Galt*, 1998 MT 300, 292 Mont. 56, 968 P.2d 1135, we observed that "[a]n easement by implication is created by operation of law at the time of severance, rather than by written instrument," and that "[t]here are only two types of implied easements: (1) an intended easement based on a use that existed when the dominant and servient estates were severed, and (2) an easement by necessity." *Hoyem Trust*, ¶ 17. By contrast, we stated in

22

*Halverson* that "[a]n easement by reservation must arise from the written documents of conveyance." *Halverson*, 268 Mont. at 172, 885 P.2d at 1288; *accord Ruana*, 275 Mont. at 447, 913 P.2d at 1251; *Tungsten Holdings*, 282 Mont. at 390, 938 P.2d at 642; *Pearson*, ¶¶ 18, 20. When the deed itself contains no language reserving (or granting) an easement, our easement-by-reference doctrine contemplates that an explicit reference in the deed to a plat or certificate of survey on which an easement is clearly depicted and adequately described is sufficient to establish the easement.

¶42    In *Bache*, for instance, the certificate of survey depicted Tracts 1 and 2 and a 30-foot-wide strip of land along the western boundary of Tract 2. The strip of land extended from Tract 1 to a state route on the other side of Tract 2, and it was "clearly and specifically" identified with the label "P.R.E.," which the legend identified as "private roadway easement." We held that in this manner, the Baches had reserved an easement over Tract 2 in favor of Tract 1. *See Bache*, 267 Mont. at 282, 286, 291, 883 P.2d at 819, 822, 823. In *Halverson*, the certificate of survey "clearly show[ed]" and "adequately described" a 30-foot-wide road easement extending from the northeast corner of Turner's tract westerly for a distance of 188.52 feet to provide access from Dahlia's adjoining retained tract to a street running north from the northern boundary of Turner's tract. We held that in this manner, Dahlia had reserved an easement over Turner's tract for the benefit of Dahlia's tract. *See Halverson*, 268 Mont. at 170-71, 172, 173, 885 P.2d at 1287, 1288, 1289. In *Pearson*, the plat "clearly depict[ed] and label[ed]" a bridle path easement crossing the subdivision for the use of all lot owners. *See Pearson*, ¶¶ 1, 10, 17. In each of these cases, express language was used (1) to refer in the instrument of

23

conveyance to the plat or certificate of survey and (2) to identify and describe the intended easement. By contrast, in *Tungsten Holdings*, the mere fact that lot 34's "long and narrow configuration" gave it "the appearance of a roadway" or that "the developers may have intended it as roadway" was insufficient. *Tungsten Holdings*, 282 Mont. at 390, 938 P.2d at 643.

¶43 In sum, an easement created by reference in an instrument of conveyance to a plat or certificate of survey adequately describing the easement is an express easement. The term "express" is defined as "[c]learly and unmistakably communicated; directly stated." *Black's Law Dictionary* 620 (Bryan A. Garner ed., 8th ed., West 2004); *cf.* § 28-2-103, MCA (defining an "express" contract as "one the terms of which are stated in words"). The term "expressed" is defined as "[d]eclared in direct terms; stated in words; not left to inference or implication." *Black's Law Dictionary* 620. Consistent with these definitions, the intent to create an easement must be clearly and unmistakably communicated on the referenced plat or certificate of survey using labeling or other express language. This is the minimal requirement to establish the easement. An easement may not be inferred or implied from an unlabeled or inadequately described swath of land or other such depiction appearing on a plat or certificate of survey. *See Our Lady of the Rockies, Inc. v. Peterson*, 2008 MT 110, ¶ 57, ___ Mont. ___, ¶ 57, ___ P.3d ___, ¶ 57.

### III. Application of the Doctrine to the Davis-Lockman Conveyance

¶44 Turning now to the case at hand, we first note that the alleged easement over Tract 1 was reserved, if at all, when Tract 1 was split from single ownership. *Ruana*, 275

24

Mont. at 448, 450-51, 913 P.2d at 1252, 1253-54. That event occurred in October 1987 when Davis conveyed Tract 1 to the Lockmans. Thus, the Davis-Lockman transaction is decisive. Furthermore, as explained above, the "subject to" clause in the Davis-Lockman deed did not create or reserve easement rights in Davis. *Ruana*, 275 Mont. at 449, 913 P.2d at 1252-53. Thus, the existence of the alleged easement over Tract 1 depends on (1) the incorporation of COS 4446 into the Davis-Lockman deed and (2) the adequacy of the description of the easement on COS 4446.[2] *Halverson*, 268 Mont. at 173, 885 P.2d at 1289; *Ruana*, 275 Mont. at 450, 913 P.2d at 1253.

¶45     The Waldhers contend that COS 4446 was not incorporated, in its entirety, into the Davis-Lockman deed. They argue that the "limited reference" in the deed to "Tract 1 of Certificate of Survey No. 4446" (as opposed to a reference to "the entire COS") was "legally insufficient" to incorporate COS 4446 into the deed. We disagree. In *Bache*, the deed described the property being conveyed by metes and bounds and then referred to the property conveyed as "Tract 2 shown on Certificate of Survey No. 1657." *See Bache*, 267 Mont. at 282, 883 P.2d at 819. Likewise, in the case at hand, the property being conveyed is described in the Davis-Lockman deed by metes and bounds and then is referred to as "Tract 1 of Certificate of Survey No. 4446." This is sufficient, for purposes of the easement-by-reference doctrine, to incorporate COS 4446 into the deed. The dispositive issue, therefore, is the adequacy of the description on COS 4446.

---

[2] Blazer has provided a copy of COS 4268 as an appendix to his appellate brief. However, as just explained, the Davis-Lockman deed is decisive here, and that deed refers to COS 4446, not COS 4268. (COS 4268 is referenced in the Davis-Blazer deed.) Thus, COS 4268 has no bearing on our analysis.

## The Southwest Property

¶46    We begin with Davis's (and now Blazer's) off-survey property to the south and west of Tract 4.  The Waldhers do not dispute that COS 4446 depicts a strip 30 feet wide along the northern and western boundaries of Tract 1 and that this strip is clearly labeled "30' EASEMENT ROAD."  However, they point out that "[COS 4446] shows the road leaving Tract 4 onto unidentified real property" and that "[t]here are no labels, words or drawings to learn the scope of the easement nor the identity of the dominant estates within the COS."  They argue that under *Bache*, *Halverson*, and *Ruana*, the grantee of property being burdened by a servitude must have knowledge of its use or its necessity and, to this end, there must be an adequate description of the easement on the referenced certificate of survey.  They contend that an "adequate description" means that "the servient and dominant tracts are known and depicted in the COS," and they point out that in both *Bache* and *Halverson*, the easement's termini were shown on the COS, thereby giving the grantee of the servient estate knowledge of the easement's use or necessity.  Therefore, according to the Waldhers, an easement depicted on a certificate of survey can "only be for the benefit of Tract(s) shown on the *same* COS."  They acknowledge Davis's trial testimony that he wanted to provide access to his off-survey property to the south and west of Tract 4; however, they point out that an easement by reservation must arise from the written documents of conveyance and that Davis's southwest property is not shown or even mentioned in the Davis-Lockman transaction documents.

¶47    In response, Blazer asserts that "there is no such requirement" that "a COS must show both the servient *and* the dominant estate on the same document."  He opines that

26

"[a] servient estate does not exist in limbo; by its very nature it is servient to a dominant estate." Blazer then points out that although Davis's southwest property is not shown on COS 4446, "it was shown on COS 4268 which is referenced in Blazer's deed." However, the Davis-Blazer deed cannot reserve an easement over land (in particular, Tract 1) not then owned by Davis. Rather, as explained above, the Davis-Lockman deed is decisive here, and that deed refers to COS 4446, not COS 4268. Blazer cites no authority for relying on a certificate of survey (No. 4268) that was *not* referenced in the pertinent instrument of conveyance (the Davis-Lockman deed). Blazer also relies on Davis's September 2004 trial testimony, though he cites no authority for incorporating this extrinsic evidence into the Davis-Lockman transaction documents.

¶48 We agree with the Waldhers that the easement road depicted on COS 4446 cannot benefit the off-survey property to the south and west of Tract 4, and we correspondingly reject Blazer's suggestion that his alleged right to use the easement may be established through extrinsic evidence. We reach this conclusion for the following reasons.

¶49 First, we have stated repeatedly that "[a]n easement by reservation must arise from *the written documents of conveyance*" (emphasis added). *Halverson*, 268 Mont. at 172, 885 P.2d at 1288; *Ruana*, 275 Mont. at 447, 913 P.2d at 1251; *Tungsten Holdings*, 282 Mont. at 390, 938 P.2d at 642; *see also Pearson v. Virginia City Ranches Ass'n*, 2000 MT 12, ¶¶ 20, 23, 298 Mont. 52, ¶¶ 20, 23, 993 P.2d 688, ¶¶ 20, 23; § 70-20-101, MCA ("No estate or interest in real property . . . can be created, granted, assigned, surrendered, or declared otherwise than by operation of law or a conveyance or other instrument in writing . . . ."). Our easement-by-reference cases recognize the creation of an easement

27

based on a plat or certificate of survey that is referenced in the deed. *Bache*, 267 Mont. at 285-86, 883 P.2d at 821-22; *Halverson*, 268 Mont. at 173-74, 885 P.2d at 1289. Our cases do not, however, recognize the creation of an easement based on unreferenced documents and post-transaction testimony as to what the parties intended. Moreover, nothing in our cases even suggests that a property description which has not been included in the written documents of conveyance may be supplied by extrinsic documents or by the grantor himself—at his discretion and if he happens to be available—17 years after the fact. Indeed, as explained in our discussion of Tract 4 below, such evidence is not admissible for this purpose. *See* ¶¶ 69-72, *infra*.

¶50 Again, in *Tungsten Holdings*, we held that "[t]he mere fact that lot 34's long and narrow configuration gives it the appearance of a roadway or that the developers may have intended it as [a] roadway is not sufficient. Easements by reservation must be created or reserved in writing." *Tungsten Holdings*, 282 Mont. at 390, 938 P.2d at 643. Likewise, the mere fact that the grantor intended a particular property to benefit from a reserved easement is insufficient; that intent must be expressed in the written documents of conveyance. *Halverson*, 268 Mont. at 172, 885 P.2d at 1288; *Ruana*, 275 Mont. at 447, 913 P.2d at 1251; *Tungsten Holdings*, 282 Mont. at 390, 938 P.2d at 642-43. Here, Blazer concedes that Davis's property to the south and west of Tract 4 is not identified in the Davis-Lockman deed or on COS 4446.

¶51 Second, a land description is necessary in an instrument conveying title so that the extent of the claim to the property may be determined, and a reference to a plat or certificate of survey may be included to express, confirm, or amplify the land description.

*See Halverson*, 268 Mont. at 172, 885 P.2d at 1288. Furthermore, reference in an instrument of conveyance to a plat or certificate of survey on which an easement is "adequately described" is sufficient to establish the easement. *Halverson*, 268 Mont. at 173, 885 P.2d at 1289. It is axiomatic, however, that an easement appurtenant has not been "adequately described" when the identity of the dominant tenement has been omitted and cannot be ascertained from the documents of conveyance. *See Lennertz v. Yohn*, 79 N.E.2d 414, 417 (Ind. App. 1948) ("[T]he rule established by the weight of authority is to the effect that, in order to create an express easement, or a covenant granting a right of way by deed or other written instrument, 'The instrument by which an easement by express grant is created should describe with reasonable certainty the easement created and the dominant and servient tenements. A reservation of an easement is not operative in favor of land not described in the conveyance.' " (internal citations omitted)). In addition, we consistently have emphasized that "[i]n determining the existence of an easement by reservation in documents of conveyance, it is necessary that the grantee of the property being burdened by the servitude have knowledge of its use or its necessity." *Halverson*, 268 Mont. at 172, 885 P.2d at 1288; *Ruana*, 275 Mont. at 447, 913 P.2d at 1251; *Pearson*, ¶ 20. Plainly, an easement's use or necessity for the benefit of particular land cannot be ascertained from the documents of conveyance if those documents fail to depict or identify that particular land.

¶52 We have recognized the creation of an easement where the deed referred to a plat or certificate of survey on which the easement was clearly depicted and labeled as burdening an identifiable servient tenement for the benefit of an identifiable dominant

29

tenement. But we have never recognized an easement created to benefit a dominant tenement that was not ascertainable from the referenced plat or certificate of survey. In *Bache*, the certificate of survey established the division of the Baches' land into two parcels, Tracts 1 and 2. The certificate of survey also depicted a 30-foot-wide strip of land along the western boundary of Tract 2 (the grantee's property). The strip of land extended from Tract 1 (the grantors' retained property) to a state route on the other side of Tract 2, and it was labeled "P.R.E.," which the legend identified as "private roadway easement." *See Bache*, 267 Mont. at 285-86, 291, 883 P.2d at 821-23. It was clear from this depiction and labeling that the easement burdened Tract 2 for the benefit of Tract 1 to provide access from Tract 1 to the state route. In *Halverson*, the need for a reservation of a way of ingress and egress over the grantee's (Turner's) tract for the benefit of the grantor's (Dahlia's) retained and otherwise-landlocked tract was apparent on the certificate of survey, which showed a 30-foot-wide road extending from the common boundary between Turner's and Dahlia's respective tracts, 188.52 feet across Turner's tract, to a public street. *See Halverson*, 268 Mont. at 170-71, 173, 885 P.2d at 1287, 1288. The certificate of survey made it clear that the easement burdened Turner's tract for the benefit of Dahlia's tract to provide access from Dahlia's tract to the public street. In *Pearson*, the plat clearly depicted and labeled a bridle path easement crossing the subdivision for the use of all lot owners. *See Pearson*, ¶¶ 1-27.

¶53    By contrast, in the case at hand, the alleged dominant tenement—Davis's (and now Blazer's) property to the south and west of Tract 4—is not identified anywhere on COS 4446. Rather, COS 4446 depicts Tracts 1 through 7 and an easement road crossing

Tracts 1 and 4 and continuing to unidentified off-survey property located beyond Tract 4. COS 4446 fails to provide any information whatsoever as to the use or necessity of the open-ended road leaving Tract 4. Accordingly, because Blazer's off-survey property to the south and west of Tract 4 is not an identifiable dominant tenement on COS 4446, it cannot benefit from the easement depicted thereon.

¶54 In sum, an easement by reservation must arise from the written documents of conveyance. Reference in an instrument of conveyance to a plat or certificate of survey on which an easement is adequately described is sufficient to establish the easement. However, an easement appurtenant is not adequately described if the identities of the dominant and servient tenements are not ascertainable with reasonable certainty from the referenced plat or certificate of survey. The grantor's intent to reserve an easement for the benefit of particular land must be clearly and unmistakably communicated and not left to inference, implication, or extrinsic evidence. Accordingly, because Davis's property to the south and west of Tract 4 is not an identifiable dominant tenement on COS 4446, the reference in the Davis-Lockman deed to COS 4446 did not create or reserve easement rights in Davis and his successor in interest (Blazer) for the benefit of that property.

**Tract 4**

¶55 With respect to Tract 4, the Waldhers argue that in order to "adequately describe the easement," *Bache* and *Halverson* require a referenced certificate of survey "to show what tract(s) on the survey are [to] be the dominant tract(s)." The Waldhers reason that here, since the easement road depicted on COS 4446 crosses Tract 4 and leaves

31

COS 4446 with a 90-degree turn to the west, it is not clear what was intended, what land was to be benefited, and what purpose was to be served. They suggest that the depiction of the easement road could be interpreted as burdening Tract 4 for the benefit of the other tracts on COS 4446 (Tracts 1, 2, 3, 5, 6, and 7). Thus, given this degree of uncertainty, the Waldhers contend that an easement was not created under the easement-by-reference doctrine.

¶56 We agree that COS 4446 fails to establish an easement for the benefit of Tract 4. As explained above in ¶¶ 49-54, an easement appurtenant is not adequately described for purposes of the easement-by-reference doctrine if the identities of the dominant and servient tenements cannot be ascertained with reasonable certainty from the referenced plat or certificate of survey. The grantor's intent to reserve or grant an easement for the benefit of particular property must be clearly and unmistakably communicated and not left to inference, implication, or extrinsic evidence. Furthermore, in determining the existence of an easement in the written documents of conveyance, it is necessary that the grantee of the property to be burdened by the servitude have knowledge of its use or its necessity.

¶57 Here, although there is a 30-foot-wide easement road depicted and labeled on COS 4446, the use or necessity of this open-ended road and the intended dominant and servient tenements are not ascertainable with reasonable certainty from the certificate of survey. An individual examining COS 4446 cannot know whether an easement is being reserved or granted and, thus, whether Tract 4 is dominant or servient. In the case of a reservation, Tract 4 benefits from an easement over Tract 1 to access Whitefish Stage

32

Road. *See e.g. Bache*, 267 Mont. at 285-86, 291, 883 P.2d at 821-23 (recognizing an easement for the benefit of the grantor's retained tract to reach a state route); *Halverson*, 268 Mont. at 170-71, 173-74, 885 P.2d at 1287, 1289 (recognizing an easement for the benefit of the grantor's retained and otherwise-landlocked tract to reach a public street). By contrast, in the case of a grant, Tracts 1, 2, 3, 5, 6, and 7 of COS 4446 benefit from an easement over Tract 4; for example, Davis could have intended to provide a shorter route between the tracts shown on COS 4446 and Bowdish Road (*see* the depiction in ¶ 10, *supra*); or perhaps he intended to provide access to a recreational facility, located to the west of Tract 4, for the benefit of all the COS 4446 lot owners; or perhaps he intended the easement road as a trail, e.g., for off-road vehicles, that all of the lot owners could use. *Cf. Pearson*, ¶¶ 1-27 (recognizing a bridle path easement crossing the defendants' lots for the use of all lot owners in the subdivision). Whatever Davis intended the use or necessity of the road to be, however, the point here is that his intent is not clearly and unmistakably communicated on COS 4446. Tract 4 could be a dominant tenement or a servient tenement depending on the road's intended use or necessity which, again, is not ascertainable with reasonable certainty from COS 4446. Necessarily, then, the document failed to establish an easement for the benefit of Tract 4.

¶58 The Dissent contends that our conclusion here "calls into question what kind of specificity would be required in a plat or certificate of survey to give the grantee of the property being burdened by the servitude 'knowledge of its use or its necessity.'" Dissent, ¶ 83. We disagree. The easement-by-reference cases in which we have

recognized the creation of an easement illustrate what kind of specificity is sufficient and why the depiction on COS 4446 is not sufficient.

¶59 As we discussed in ¶ 52 above, it was abundantly clear from the depiction and labeling on the certificate of survey at issue in *Bache* that the easement burdened Tract 2 for the benefit of Tract 1 to provide access from Tract 1 to the state route. Likewise, in *Halverson*, the certificate of survey made it clear that the easement burdened Turner's tract for the benefit of Dahlia's tract to provide access from Dahlia's tract to the public street. And in *Pearson*, the plat clearly depicted and labeled a bridle path easement crossing the subdivision for the benefit of all lot owners. By contrast, COS 4446 depicts Tracts 1 through 7 and an open-ended road crossing Tracts 1 and 4 and continuing to an unidentified off-survey destination located beyond Tract 4. COS 4446 utterly fails to provide any information as to the use or necessity of this road and, correspondingly, the intended dominant tenement(s). Contrary to the Dissent, it is far from clear that the road's only intended purpose is to benefit Tract 4.

¶60 Indeed, the Dissent acknowledges that COS 4446 is ambiguous. Dissent, ¶ 91. However, the Dissent argues that the "subject to" clause contained in the Davis-Lockman deed resolves the ambiguity. Dissent, ¶¶ 86-92. That clause states: "SUBJECT TO 30 foot road easement as shown on Certificate of Survey No. 4446, records of Flathead County, Montana." According to the Dissent, this language clarifies the dominant and servient tracts of COS 4446. The Dissent's argument founders for three reasons.

¶61 First, even if the "subject to" language in the Davis-Lockman deed establishes that Tract 1 is *servient* (as the Dissent argues), this language does not establish which tract or

34

tracts are *dominant*.  As suggested in the different scenarios set out above, Tract 4 could benefit from an easement over Tract 1; Tracts 2, 3, 5, 6, and 7 could benefit from an easement over Tracts 1 and 4; or all seven tracts could benefit from a common right to use the road.  In other words, each of the tracts on COS 4446 is a potential dominant tenement; and the "subject to" clause is of no assistance whatsoever in resolving this ambiguity.  At most, the clause is merely indicative of a servient tract (Tract 1).

¶62    Second, and in this regard, the Davis-Foster deed (by which Davis conveyed Tract 4 to the Fosters) contains a similar "subject to" clause, which states:  "SUBJECT TO the 30' road easement along the westerly boundary as shown on Certificate of Survey No. 4446 . . . ."  Thus, following the Dissent's argument to its logical conclusion, Tract 4 must *also* be servient to the easement depicted on COS 4446.  This, in turn, leaves us back at square one with the question of which tract is dominant.

¶63    Lastly, Blazer has invoked the easement-by-reference doctrine to establish an easement over Tract 1 for the benefit of his properties.  He claims that the reference in the Davis-Lockman deed to COS 4446 created the easement.  The Dissent acknowledges this point and the fact that Blazer is *not* relying on the "subject to" clause in the Davis-Lockman deed to establish the easement.  Dissent, ¶ 89.  Furthermore, the Dissent agrees that under our easement-by-reference doctrine, the purported easement fails if the identities of the dominant and servient tenements are not ascertainable with reasonable certainty from the referenced plat or certificate of survey, since it is necessary that the grantee of the property to be burdened by the servitude have knowledge of its use or its necessity.  Dissent, ¶ 80.  Nevertheless, the Dissent then proceeds to fashion what appears

to be either an exception to this clear rule or a brand new easement doctrine of the Dissent's own making. In particular, the Dissent proposes that an easement can be created by reference in an instrument of conveyance to an ambiguous plat or certificate of survey which in turn is "clarified or qualified" by referring back to a "subject to" clause contained in the deed. Evidently, in the Dissent's view, this new easement-by-reference-to-ambiguous-plat/COS-and-"subject to"-clause doctrine would reduce the complexity of "the already tortuous body of our easement-by-reference jurisprudence." Dissent, ¶ 83. We think exactly the opposite is true.

¶64 We have consistently held that " 'subject to' language in a document of conveyance does not create an easement." *Bache*, 267 Mont. at 286, 883 P.2d at 821 (citing *Wild River Adventures v. Board of Trustees*, 248 Mont. 397, 401, 812 P.2d 344, 346-47 (1991)); *accord Ruana*, 275 Mont. at 449, 913 P.2d at 1252; *Kelly v. Wallace*, 1998 MT 307, ¶ 51, 292 Mont. 129, ¶ 51, 972 P.2d 1117, ¶ 51. We have also emphasized that nothing in the use of the words "subject to," in their ordinary use, "even hint[s] at the creation of affirmative rights or connote[s] a reservation or retention of property rights." *Wild River*, 248 Mont. at 401, 812 P.2d at 347. Rather, "subject to" is commonly used in a deed to refer to *existing* easements, liens, and real covenants that the grantor wishes to exclude from warranties of title. *Wild River*, 248 Mont. at 401, 812 P.2d at 347. We refuse to wrench these settled principles from their moorings—and thereby inject uncertainty into our easement caselaw—by employing a "subject to" clause to create an easement from an ambiguous plat or certificate of survey. The proposition itself is legally untenable; and it is questionable, in any event, whether a "subject to" clause could

36

even accomplish the result proposed by the Dissent, as the case at hand illustrates given that the "subject to" clause in the Davis-Lockman deed affords no insight into the intended dominant tenement(s) of the easement road depicted on COS 4446.

¶65 At bottom, the Dissent's arguments are circular and internally inconsistent. On one hand, the Dissent states that "an easement-by-reference fails if it does not depict and identify both the dominant and servient tenements." Dissent, ¶ 80. Yet, on the other hand, the Dissent asserts that an ambiguous plat or certificate of survey can create an easement, notwithstanding the fact that the dominant and servient estates are not identified as such thereon. *See* Dissent, ¶¶ 89-92. The basis for this latter assertion is that a "subject to" clause in the deed may "clarify or qualify an existing easement." Dissent, ¶ 89. Yet, an easement cannot be "existing" if its sole basis for existence is an ambiguous plat or certificate of survey—the original point conceded by the Dissent.

¶66 The Dissent also claims that a "subject to" clause in a deed establishes that the grantee's parcel is servient to an easement road depicted on an ambiguous plat or certificate of survey referenced in the deed. *See* Dissent, ¶¶ 89-92. So ends the Dissent's argument. Yet, establishing that a particular parcel is servient does not necessarily establish which parcel or parcels are dominant—which the Dissent has already conceded is required to create the easement. The Dissent's arguments thus fail to establish the proposition for which they are being offered.

¶67 It bears repeating that purchasers must be able to ascertain, with reasonable certainty, from the referenced plat or certificate of survey whom the depicted easement benefits, whom it burdens, and what its use or necessity is. Here, COS 4446 lacks the

clarity necessary to impart such information, and the "subject to" clause of the Davis-Lockman deed does not remedy this flaw. Therefore, as stated above, because the depicted easement's intended use or necessity and, correspondingly, the intended dominant and servient estates are not ascertainable with reasonable certainty from COS 4446, the document failed to establish an easement for the benefit of Tract 4.

¶68 Blazer elicited testimony from Davis for the purpose of establishing what Davis intended in the Davis-Lockman transaction documents. Davis testified that he wanted to create an easement to provide access to "the top of the hill" (which he explained was at or about the southwest corner of Tract 4) and his property to the south and west of Tract 4. In effect, Davis's testimony supplied terms that were not included in the Davis-Lockman transaction documents—namely, that an easement was being "reserved" (as opposed to "granted") and that Tract 1 was servient to Tract 4 (not vice versa). The District Court's findings of fact and conclusions of law reflect that the court relied on this testimony in ruling that Tract 4 benefited from an easement over Tract 1. Thus, it is necessary to address whether this evidence was properly considered in construing the Davis-Lockman transaction documents. For the reasons which follow, we hold that it was not.

¶69 An easement can be granted or reserved under our easement-by-reference doctrine by an instrument in writing only. Section 70-20-101, MCA; *Halverson*, 268 Mont. at 172, 885 P.2d at 1288; *Ruana*, 275 Mont. at 447, 913 P.2d at 1251; *Tungsten Holdings*, 282 Mont. at 390, 938 P.2d at 642. " 'It is as a general rule necessary that a deed contain operative words of grant * * * ; that a deed without words of conveyance passes no title * * * ; and that, if an instrument has no words of conveyance, the courts have no right to

38

put them in by interpretation * * * .' " *Jones v. Flasted*, 169 Mont. 60, 65, 544 P.2d 1231, 1233-34 (1976) (asterisks in *Jones*) (quoting *Hochsprung v. Stevenson*, 82 Mont. 222, 234, 266 P. 406, 408 (1928)).  Furthermore, a reservation in a deed should be set forth with the same prominence as the property granted so that the grantor's intent to create a reservation is clearly expressed. *See North Shore, Inc. v. Wakefield*, 530 N.W.2d 297, 300 (N.D. 1995); *Miller v. Kirkpatrick*, 833 A.2d 536, 545 (Md. 2003).  Technical words are not required; indeed, our easement-by-reference cases contemplate that a depiction on a plat or certificate of survey referenced in the deed may be sufficient in lieu of actual "operative words" in the deed. *See e.g. Halverson*, 268 Mont. at 172-74, 885 P.2d at 1288-89 (holding that while the deed at issue did not contain any language expressly reserving an easement, the depiction on the referenced certificate of survey was sufficient to establish that an easement was being reserved).  However, it is essential that an intention to convey or create a particular interest in real property is clearly expressed in the documents of conveyance. *See Jones*, 169 Mont. at 65, 544 P.2d at 1234; *Capstar Radio Operating Co. v. Lawrence*, 152 P.3d 575, 578 (Idaho 2007); J. Palomar, *Patton and Palomar on Land Titles* vol. 2, § 343, at 149-52 (3d ed., West 2003).

¶70    Furthermore, a property description is a necessary inclusion in an instrument conveying title so that the extent of the claim to the property may be determined. *See Halverson*, 268 Mont. at 172, 885 P.2d at 1288.  A deed left blank as to legal description is void to convey title (unless authority to complete the deed is given in writing). *McCormick v. Brevig*, 1999 MT 86, ¶ 82, 294 Mont. 144, ¶ 82, 980 P.2d 603, ¶ 82.  A property description is adequate if it contains sufficient information to permit the

identification of the property to the exclusion of all others. *McDonald v. Jones*, 258 Mont. 211, 216, 852 P.2d 588, 591 (1993). And extrinsic evidence is admissible under certain circumstances to resolve an ambiguity in the property description or to apply the deed to its proper subject matter. *See e.g. Wills Cattle Co. v. Shaw*, 2007 MT 191, ¶¶ 20-33, 338 Mont. 351, ¶¶ 20-33, 167 P.3d 397, ¶¶ 20-33; *Proctor v. Werk*, 220 Mont. 246, 250, 714 P.2d 171, 173 (1986); § 70-20-202(2), MCA; *Mary J. Baker Revoc. Trust v. Cenex Harvest States*, 2007 MT 159, ¶¶ 42-55, 338 Mont. 41, ¶¶ 42-55, 164 P.3d 851, ¶¶ 42-55.

¶71 However, extrinsic evidence may not provide the property description in the first instance or add terms to an insufficient description. "The distinction . . . should always be clearly drawn between the admission of oral and extrinsic evidence for the purpose of identifying the land described and applying the description to the property and that of supplying and adding to a description insufficient and void on its face." *Lexington Heights v. Crandlemire*, 92 P.3d 526, 531 (Idaho 2004) (citation and internal quotation marks omitted); *see also Davison v. Robbins*, 517 P.2d 1026, 1029 (Utah 1973) ("Parol evidence is admissible to apply, not to supply, a description of lands in a contract. Parol evidence will not be admitted to complete a defective description, or to show the intention with which it was made."). This principle is reflected in § 70-20-202, MCA, which bars the admission of "evidence of the terms of [a written] agreement other than the contents of the writing," but permits "other evidence . . . to explain an extrinsic

ambiguity."[3]  *See* § 70-20-202(1), (2), MCA.  This rule thus serves to implement the writing requirement of the statute of frauds:

> When the agreement itself fails to identify the property, or to furnish the means by which it may be done, by pointing to some extrinsic fact by whose aid the ambiguity may be removed, to allow parol evidence to explain what was intended, would be to allow the entire consideration of a contract in relation to lands, on the part of the person conveying the property, to be proved by parol, and render useless and nugatory the above provision of the statute of frauds [requiring every contract for the sale of any lands or interest in lands to be in writing].

*Ryan v. Davis*, 5 Mont. 505, 512, 6 P. 339, 342 (1885).

¶72  The foregoing principles bar the use of Davis's testimony to establish that the Davis-Lockman transaction documents reserve an easement over Tract 1 for the benefit of Tract 4.  First, the only operative words in the Davis-Lockman deed state that Davis does "hereby grant, bargain, sell and convey" Tract 1 of COS 4446.  There are no operative words respecting the easement road depicted on COS 4446—e.g., "reserve" or "grant"—and such language may not be inserted into the deed using parol evidence.  Second, although an easement road is depicted and labeled on COS 4446, the certificate of survey contains insufficient information from which to ascertain with reasonable certainty the intended dominant and servient tenements.  Supplying that information through Davis's testimony would be, in effect, using parol evidence to add terms to an existing but insufficient property description, which is not permitted.

---

[3] "Extrinsic ambiguity" is another term for "latent ambiguity."  *See Black's Law Dictionary* 88, 625 (Bryan A. Garner ed., 8th ed., West 2004).  A "latent ambiguity" is "[a]n ambiguity that does not readily appear in the language of a document, but instead arises from a collateral matter when the document's terms are applied or executed <the contract contained a latent ambiguity:  the shipping terms stated that the goods would arrive on the *Peerless*, but two ships have that name>." *Black's Law Dictionary* 88.

¶73 Aside from the statute of frauds and the foregoing rules governing the use of extrinsic evidence, allowing Davis's testimony to establish the easement in the first instance as burdening Tract 1 for the benefit of Tract 4 would also undermine the notice provisions of the recording statutes. Any instrument or judgment affecting the title to or possession of real property may be recorded. Section 70-21-201(1), MCA. Instruments entitled to be recorded must be recorded by the county clerk of the county in which the real property affected thereby is situated. Section 70-21-208, MCA. Providing this central depository within each county enables a prospective purchaser to determine what kind of title he or she is obtaining without having to search beyond public records. *See* 66 Am. Jur. 2d *Records and Recording Laws* § 40 (2001). Correspondingly, an instrument that is recorded as prescribed by law imparts constructive notice of its contents to all interested parties. *See* § 70-21-302(1), MCA; *Hauseman v. Koski*, 259 Mont. 498, 502, 857 P.2d 715, 718 (1993); *Guerin v. Sunburst Oil & Gas Co.*, 68 Mont. 365, 370, 218 P. 949, 951 (1923).

¶74 But a recorded instrument cannot impart constructive notice that an easement burdens a particular parcel of land for the benefit of another if the intended dominant and servient estates are ascertainable only by resort to parol evidence. *Cf. Wills Cattle Co. v. Shaw*, 2007 MT 191, ¶ 32, 338 Mont. 351, ¶ 32, 167 P.3d 397, ¶ 32 (observing that a search of the defendants' chain of title would not have revealed the easement claimed by the plaintiff, since the relevant deeds were ambiguous with respect to which ditch rights were being conveyed). Blazer suggests that he should be permitted to come to court and fix the defects in the Davis-Lockman transaction documents so that they comport with

what Davis purportedly intended 17 years earlier. Good-faith purchasers of real property, however, are entitled to rely on publicly recorded deeds, plats, and certificates of survey pertaining to the subject property to disclose accurately all encumbrances, easements, and impediments thereon. They should not have to defend their title years after the fact from claims of "Here is what the documents show, but this is what was really meant." Accordingly, we will not impose a requirement under the easement-by-reference doctrine that prospective purchasers track down—perhaps decades after the fact—unrecorded extrinsic evidence in order to ascertain the use or necessity of a purported easement depicted on a plat or certificate of survey in their chain of title.

¶75 In sum, COS 4446 fails to establish an easement for the benefit of Tract 4, given that the intended dominant and servient tenements are not ascertainable with reasonable certainty from COS 4446. This is not to say that Tract 4 is not an identifiable dominant tenement; it is an identifiable dominant tenement. But so are Tracts 1, 2, 3, 5, 6, and 7, depending on the easement's purpose—which, as explained above, is not ascertainable with reasonable certainty from the Davis-Lockman transaction documents. Under our easement-by-reference doctrine, the documents of conveyance cannot leave this degree of uncertainty. Rather, in order to grant or reserve an easement by merely depicting it on a plat or certificate of survey referenced in the deed, an individual looking at that plat or certificate of survey must be able to ascertain, with reasonable certainty, the depicted easement's use or necessity and the intended dominant and servient tenements. Although Davis testified in this regard that he wanted to create an easement to provide access to the upper portion of Tract 4 and his southwest property, it was necessary that this intent be

43

clearly and unmistakably communicated in the Davis-Lockman transaction documents. Extrinsic evidence may not be used to establish the easement in the first instance as burdening one parcel of land for the benefit of another, since such an approach would expand our easement-by-reference doctrine to recognize the creation of an easement using post-transaction testimony, which in turn would contravene the well-established principles governing property transfers discussed above.

¶76 Before concluding, we note the Dissent's contention that our holding herein somehow "confounds" and "complicates" the "already complicated" and "tortuous" body of our easement-by-reference jurisprudence. Dissent, ¶¶ 79, 83. Yet, the fundamental principles articulated above—with which the Dissent generally agrees (*see* Dissent, ¶¶ 80-81)—clarify exactly what is required to create an easement under the easement-by-reference doctrine. By contrast, the Dissent would muddle the law with respect to "subject to" clauses and allow for the creation of an easement by reference to an ambiguous plat or certificate of survey. While this approach may be of benefit to Blazer, it is fundamentally unfair to the Waldhers, who have a right to enjoy their property free from the impediment of an unsubstantiated easement grounded in a vague depiction on a certificate of survey. Worse still, and on a wider scale, the Dissent's approach would confound our easement-by-reference jurisprudence even further and inject uncertainty and insecurity into land titles generally. We refuse to perpetuate—much less exaggerate—the imprecision and confusion that brought us to this complicated case in the first place. As Winston Churchill is reported to have observed, "If you simply take up the attitude of defending a mistake, there will be no hope of improvement."

44

## CONCLUSION

¶77    The District Court erred in concluding that the Davis-Lockman transaction documents created an easement appurtenant across Tract 1 of COS 4446 for the benefit of Tract 4 and Davis's (now Blazer's) off-survey property to the south and west of Tract 4.

¶78    Reversed.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ JIM RICE



Justice Brian Morris dissenting.

¶79    I concur with the Court's conclusion that COS 4446 could not, as a matter of law, create an easement burdening Tract 1 for the benefit of any properties not shown on the survey. Opinion, ¶ 54. I dissent from the Court's conclusion, however, that the same principles prevent COS 4446 from creating an easement burdening Tract 1 for the benefit of an on-survey property, Tract 4. Opinion, ¶ 75. The Court's analysis of whether an easement exists to benefit Tract 4 misstates our previous easement-by-reference decisions, and confounds this already complicated body of law.

¶80    I agree with the Court's summary of the easement-by-reference rule that an express easement is created "where the deed refer[s] to a plat or certificate of survey on which the easement [is] clearly depicted and labeled as burdening an identifiable servient tenement for the benefit of an identifiable dominant tenement." Opinion, ¶ 52; *accord Pearson v. Virginia City Ranches Ass'n*, 2000 MT 12, ¶ 21, 298 Mont. 52, ¶ 21, 993 P.2d 688, ¶ 21; *Tungsten Holdings, Inc. v. Parker*, 282 Mont. 387, 390, 938 P.2d 641, 642-43 (1997); *Halverson v. Turner*, 268 Mont. 168, 172-73, 885 P.2d 1285, 1288 (1994); *Bache v. Owens*, 267 Mont. 279, 285, 883 P.2d 817, 821-22 (1994). The Court correctly determines that an easement-by-reference fails if it does not depict and identify both the dominant and servient tenements, as we have held repeatedly that "it is necessary that the grantee of the property being burdened by the servitude have knowledge of its use or its necessity." Opinion, ¶ 36 (citing *Halverson*, 268 Mont. at 172, 173, 885 P.2d at 1288, 1289); *accord Pearson*, ¶ 20.

47

¶81 The Court adopts language from the appellate court of Indiana that "[t]he instrument by which an easement by express grant is created should describe with reasonable certainty the easement created and the dominant and servient tenements. A reservation of an easement is not operative in favor of land not described in the conveyance." Opinion, ¶ 51 (*quoting Lennertz v. Yohn*, 79 N.E.2d 414, 417 (Ind.App. 1948) (internal quotations omitted)). The Court properly concluded that COS 4446 could not have put the Waldhers on notice of the existence of an easement across their property to benefit off-survey properties in light of this rule.

¶82 The Court falters, however, in its application of this rule to the question of whether COS 4446 created an easement over Tract 1 for the benefit of Tract 4. The Court reasons that the Waldhers could not ascertain with reasonable certainty the identities of the dominant and servient tenements. Opinion, ¶¶ 56-57. The Court proceeds to reiterate some basic easement-by-reference principles and basic easement and property principles. Opinion, ¶¶ 67, 69-70. The Court also reviews the law of statute of frauds and Montana's notice and recording statutes. Opinion, ¶¶ 70-71, 73-74. The Court concludes that the easement benefiting Tract 4 fails because it is uncertain and can be proved only with extrinsic evidence that violates the statute of frauds. Opinion, ¶ 75.

¶83 The Court errs when it concludes that COS 4446 fails to provide with reasonable certainty the identities of the dominant and servient tenements. The uncertainty, according to the Court, arises from the fact that COS 4446 does not show "whether an easement is being reserved or granted and, thus, whether Tract 4 is dominant or servient." Opinion, ¶ 57. The Court's erroneous conclusion complicates the already tortuous body

48

of our easement-by-reference jurisprudence – the complexity of which the Court acknowledges by its meticulous review at ¶¶ 24-43. The Court's conclusion also calls into question what kind of specificity would be required in a plat or certificate of survey to give the grantee of the property being burdened by the servitude "knowledge of its use or its necessity." *Pearson*, ¶ 20 (citing *Halverson*, 268 Mont. at 172-73, 885 P.2d at 1288).

¶84 This Court previously has required little more than a simple labeled depiction of an easement on a survey or plat to create a valid easement. *E.g. Mularoni v. Bing*, 2001 MT 215, ¶¶ 6-8, 306 Mont. 405, ¶¶ 6-8, 34 P.3d 497, ¶¶ 6-8; *Pearson*, ¶ 17; *Halverson*, 268 Mont. at 170-71, 885 P.2d at 1287; *Bache*, 267 Mont. at 282, 883 P.2d at 819. The Court asserts that a "grantor's intent to reserve or grant an easement for the benefit of particular land must be clearly and unmistakably communicated and not left to inference, implication, or extrinsic evidence." Opinion, ¶ 56. This Court has never required, however, that the easement depicted on a plat or certificate of survey must include an explicit identification of the dominant and servient tenements. It always has inferred this information. *See Mularoni*, ¶¶ 6-8; *Pearson*, ¶ 17; *Halverson*, 268 Mont. at 170-71, 885 P.2d at 1287; *Bache*, 267 Mont. at 282, 883 P.2d at 819.

¶85 The Court insists that COS 4446 is fatally unclear because the grantor could have intended it to create either an easement for the benefit of Tracts 1, 2, 3, 5, 6, and 7 of COS 4446, or an easement for the benefit of Tract 4. Opinion, ¶ 61. It does not appear from COS 4446, however, that Tracts 2, 3, 5, 6, or 7 would benefit from the 30-foot road easement in light of the fact that Whitefish Stage Road separates these tracts from the

49

easement and Tracts 1 and 4. I fail to see how these tracts located to the west of Whitefish Stage Road add to the uncertainty regarding which tract the grantor intended for the easement to benefit.

¶86 COS 4446's legal relevance relates only to the Davis-Lockman deed. The Court calls the Davis-Lockman deed "decisive" in this case. Opinion, ¶ 44. The Davis-Lockman deed states expressly that Tract 1 of COS 4446 is "SUBJECT TO 30 foot road easement as shown on [COS] 4446. . . ." The Court in ¶ 28 dismisses the significance of this language on the grounds that "'subject to' language in a document of conveyance does not create an easement." The Court cites *Ruana v. Grigonis*, 275 Mont. 441, 449, 913 P.2d 1247, 1252 (1996), and *Kelly v. Wallace*, 1998 MT 307, ¶ 51, 292 Mont. 129, ¶ 51, 972 P.2d 1117, ¶ 51, to further support its proposition that "subject to" language cannot clarify or qualify an easement-by-reference. Opinion, ¶ 28. The Court cites our decision in *Wild River Adventures v. Bd. of Trustees*, 248 Mont. 397, 401, 812 P.2d 344, 347 (1991), for the original rule that "[t]here is nothing in the use of the words 'subject to,' in their ordinary use, which would even hint at the creation of affirmative rights or connote a reservation or retention of property rights." Opinion, ¶ 28 (citing *Wild River*, 248 Mont. at 401, 812 P.2d at 347.

¶87 I disagree with the Court's application of this rule to the "subject to" language in the Davis-Lockman deed. None of the cited authority speaks to the question of whether "subject to" language could clarify or qualify an easement created by reference. *Wild River* concerned whether "subject to" language, by itself in a deed, could create a road easement. *Wild River*, 248 Mont. at 400, 812 P.2d at 346. *Ruana* and *Kelly* likewise

50

concerned the effect of "subject to" standing alone, and not in conjunction with an easement depicted on a plat, even though *Ruana* and *Kelly* are both easement-by-reference cases. *Ruana's* discussion of "subject to" concerned whether an early conveyance that did not reference a plat depicting an easement nevertheless had created the alleged easement by including "subject to" language. *Ruana*, 275 Mont. at 450, 913 P.2d at 1253. *Kelly* discussed "subject to" language only after it had ruled out the possibility of the deed having created an easement-by-reference. *Kelly*, ¶ 51.

¶88 The Court in *Wild River* further commented, however, that the "subject to" phrase "is *commonly used* in a deed to refer to existing easements, liens, and real covenants that the grantor wishes to exclude from warranties of title." *Wild River*, 248 Mont. at 401, 812 P.2d at 347 (emphasis added) (internal citations omitted). The second edition of American Jurisprudence *Deeds* (*Wild River,* 248 Mont. at 401, 812 P.2d at 347, relied upon the first edition of American Jurisprudence *Deeds* for its comment regarding the common use of "subject to" language) clarifies that "subject to" language may differ from common usage depending on the manner in which it is used. It is appropriate to take into consideration all the circumstances surrounding the language's use to "effectuate what seems to be the intention of the parties" and depart from the common usage. 23 Am. Jur. 2d *Deeds* § 246 (2002).

¶89 Nothing in the *Wild River* rule, therefore, prevents us from using the "subject to" section of a deed to clarify or qualify an existing easement. This rule means only that "subject to" language cannot create an easement by itself. Blazer does not allege, however, that the "subject to" language created an easement benefiting Tract 4. Blazer

asserts that the reference in the deed to COS 4446 created the easement. The "subject to" language in the Davis-Lockman deed, stating that Tract 1 is subject to the easement depicted on COS 4446, clarifies and qualifies what otherwise could be an ambiguous survey depiction. Tract 1 represents the tenement servient to the easement created by reference to COS 4446, and not Tract 4, if we consider the "subject to" language in the Davis-Lockman deed.

¶90    *Wild River* suggests that "subject to" language appropriately may be used in this manner. *Wild River* deems "subject to" to be words of "qualification." *Wild River*, 248 Mont. at 401-02, 812 P.2d at 347; *see also* 23 Am. Jur. 2d *Deeds* § 246; *Smith v. Huston*, ___ S.W. 3d ___, 2008 WL 755083 (Tex. App. 2008); *United Land Corp. v. Drummond Co., Inc.*, ___ So.2d ___, 2008 WL 615915 (Ala. 2008); *In the Interest of Aaron D.*, 571 N.W.2d 399, 404 (Wis.App. 1997) (stating that "'[s]ubject to' is a term of qualification and it acquires its meaning from the context in which it is used."). COS 4446 describes with reasonable certainty the easement created and its dominant and servient tenements when analyzed in conjunction with the qualifying "subject to" language in the decisive Davis-Lockman deed. Opinion, ¶ 51 (citing *Lennertz*, 79 N.E.2d at 417).

¶91    I cannot agree with the Court's assertion that COS 4446 remains ambiguous as to the identities of the dominant and servient tenements in light of "subject to" language in the Davis-Foster deed. Opinion, ¶ 62. The Davis-Foster deed could not operate to create an easement in favor of Tract 1 as an easement-by-reference is effective only when the dominant and servient tenements are split from single ownership. Opinion, ¶¶ 38, 44 (citing *Ruana*, 275 Mont. at 448, 449, 913 P.2d at 1252, 1253). "Thus, the Davis-

Lockman transaction is decisive;" and the Davis-Foster transaction is irrelevant. Opinion, ¶ 44.

¶92     The Court acknowledges that, absent the uncertainty created by COS 4446's apparent ambiguity, COS 4446 provides the burdened party with knowledge that "Tract 4 benefits from an easement over Tract 1 to access Whitefish Stage Road." Opinion, ¶ 57 (citing *Bache*, 267 Mont. at 285-86, 883 P.2d at 821-23; *Halverson*, 268 Mont. at 170-71, 174, 885 P.2d at 1287, 1289). COS 4446 provided notice of the easement across Tract 1 for the benefit of Tract 4. The Davis-Lockman deed, with its "subject to" COS 4446 clause, resolves any ambiguity regarding the grantor's intent. The Court should have affirmed the District Court's determination that COS 4446 created a valid easement over Tract 1 for the benefit of Tract 4. I dissent from the Court's erroneous conclusion on this point.

/S/ BRIAN MORRIS

Justices W. William Leaphart and John Warner join in the foregoing dissent.

/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER